## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **GULF COAST ENVIRONMENTAL SYSTEMS, LLC** | § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **Civil Action No. 4:11-cv-02753** |
| **AMERICAN SAFETY INDEMNITY COMPANY and ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY** | § § § § § | |
| **Defendants.** | § § | |

---

## DEFENDANT ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

---

TO THE UNITED STATES DISTRICT JUDGE KEITH ELLISION:

Pursuant to Federal Rule of Civil Procedure 56, Defendant, Endurance American Specialty Insurance Company ("Endurance") files this motion for summary judgment on all claims asserted by Plaintiff, Gulf Coast Environmental Systems, LLC ("Gulf" or "Plaintiff") and would respectfully show the Court as follows:

## I.     INTRODUCTION

This is a liability insurance coverage dispute. Endurance files for summary judgment based on its general denials, specific denials, and affirmative defenses asserted in response to Gulf's claims for declaratory relief and under Texas Insurance Code Section 542.051. Endurance owes no defense or indemnity to Gulf for claims in the underlying Pennsylvania suit.

Gulf has sued the wrong party. If any liability policy provides coverage for this loss, it is the policy issued by defendant American Safety Indemnity Company, the insurer issuing the

policy immediately *before* the Endurance policy. The American Safety policy covered the period from March 8, 2009 to May 26, 2010, while the Endurance policy began May 26, 2010. The underlying complaint alleges, and the record evidence conclusively establishes, that the claim against Gulf was anticipated – and in fact *made* – well before the Endurance policy began. In fact, the underlying lawsuit for which Gulf seeks coverage was filed more than two weeks before the Endurance policy was issued. The record contains multiple communications and technical reports establishing that Gulf had knowledge of the claim far in advance of the June 1, 2010 issue date and the May 26, 2010 effective date of the Endurance policy. Not surprisingly, the Endurance policy precludes coverage for claims that were anticipated before the policy incepted. Similarly, Texas law precludes coverage for such a "known loss." Coverage is also precluded due to the related fact that, in its policy application, Gulf averred that it knew of no such claims before the policy incepted but that was not true. Thus, whatever the merits may be of Gulf's claim against the prior policy issued by American Safety, seeking coverage under the Endurance policy is akin to asking for homeowner's insurance while one's house is afire.

Coverage is precluded for yet another reason. Gulf has sued under two separate coverages issued by Endurance -- general liability and professional liability. The underlying claim alleges that Gulf improperly designed the product in question; Gulf's claim for coverage is rooted in professional negligence. The complaint does not seek liability because of "property damage" (as would be required under the general liability policy) but, rather, seeks damages due to the faulty design, exclusively alleging claims for professional negligence based on defective design, "breach of contract" (and unjust enrichment); there is no allegation that the faulty design caused any independent property damage to, for instance, any other product. Therefore, there can be no coverage under the general liability policy.

Thus, coverage is barred under the Endurance policy not only because the claim predated the policy, but also because the claim fundamentally is a breach of contract/breach of implied warranty-type claim that simply does not come under the coverage of these types of policies, as numerous exclusions so state. In sum, Gulf's claims under both the PL Policy and the GL Policy are precluded as a matter of law.

Therefore, by this Motion, Endurance seeks a dispositive ruling pursuant to Federal Rule of Civil Procedure 56 that no coverage exists under the Endurance Policy.

## II.    SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 requires summary judgment if the evidence shows there is "no genuine issue as to any material fact." FED. R. CIV. P. 56(c). A defendant moving for summary judgment must only present evidence disproving "the existence of any essential element of the opposing party's claim." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Disputes over irrelevant, immaterial or unnecessary facts will not render summary judgment inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Summary judgment under Rule 56 is also appropriate against a party who fails to produce evidence on an essential element of a claim on which that party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Pennington v. Vistron Corp.*, 876 F.2d 414, 425 (5th Cir. 1989). In the context of summary judgment in an insurance coverage case, the insured must produce evidence that raises a question of material fact as to the existence of a covered claim. *Royal Surplus Lines Ins. Co. v. Brownsville Indep. Sch. Dist.*, 404 F. Supp. 2d 942, 949 (S.D. Tex. 2005).

### III.  SUMMARY JUDGMENT EVIDENCE

This Motion relies on the pleadings filed in this action and the following summary judgment proof filed contemporaneously with this Motion, which is incorporated by reference herein:

Exhibit A:   First Amended Complaint dated Feb. 16, 2012: *Piramal Critical Care, Inc. v. Gulf Coast Environmental Systems, Inc.*, Cause No. C-48-CV-2010-4715, In the Court of Common Pleas, Northampton County, Pennsylvania.  [Certified Copy]

Exhibit B:   Declaration of Marc Beckerman.
Exhibit B-1: Documents Bates numbered Endurance 0000001 to 0001099.

Exhibit C:   Summons dated May 12, 2010: *Piramal Critical Care, Inc. v. Gulf Coast Environmental Systems, Inc.*, Cause No. C-48-CV-2010-4715, In the Court of Common Pleas, Northampton County, Pennsylvania.  [Certified Copy]

Exhibit D:   Complaint [Original] dated May 12, 2010: *Piramal Critical Care, Inc. v. Gulf Coast Environmental Systems, Inc.*, Cause No. C-48-CV-2010-4715, In the Court of Common Pleas, Northampton County, Pennsylvania. [Certified Copy]

### IV.  STATEMENT OF FACTS

Endurance issued a package Commercial General Liability ("GL"), Contractors Pollution Liability, and Professional Liability ("PL") insurance policy (policy number ECC101010501-00 (the "Endurance Policy")).  The effective date of the Endurance Policy is May 26, 2010.  *See* P.'s Orig. Compl. for Decl. Judgment at ¶16 (hereinafter "Compl."), Ex. C-1 at p. 2.[1]  The relevant coverage is the PL policy, Claims Made Form, and the GL policy, to the extent that Gulf is alleging property damage as opposed to professional negligence (a contention not supported by the record).  The Endurance Policy contains Professional Liability Limits of $1 million for Each

---

[1]      On the face of the policy, there is a retroactive, hand written date of March 8, 2009.  *Id.*  The Complaint states that "Plaintiff's copies carry handwritten notes of uncertain origin, but Plaintiff's claims are not based on the handwritten notes . . . . The exact page ordering of the various subparts and endorsements is uncertain, but is not material."  Compl. at ¶ 9.

Occurrence, Wrongful Act or Claim; and $1 million Claims Expense Limit for each Claim. The Retroactive Date for Professional Liability coverage is March 8, 2009. *Id.* This is shown by a handwritten notation modifying the date from May 26, 2010 to March 8, 2009. *See id.* at p. 5. This retroactive date applies only to the PL Policy and not to the GL Policy.

**A.      The Underlying Pennsylvania Lawsuit.**

The underlying suit for which Gulf seeks coverage under the Endurance Policy was filed on May 12, 2010 and is styled *Piramal Critical Care, Inc. v. Gulf Coast Environmental Systems, Inc.*, Cause No. C-48-CV-2010-4715, in the Court of Common Pleas of Northampton County, Pennsylvania (the Pennsylvania Lawsuit."). *See* Ex. D. The First Amended Complaint (the "Pennsylvania Complaint") was filed nearly two years later on February 16, 2012 alleging that Gulf improperly designed, installed, and repaired an air pollution scrubber or oxidizer referred to as the "regenerative thermal oxidizer" or "RTO." Ex. "A" at ¶ 5. The RTO is used in medical device manufacturing facilities.

The contract between Gulf and Plaintiff Piramal Critical Care, Inc. (the "Pennsylvania Plaintiff") for the RTO unit is dated June 8, 2009. *See id.* at ¶ 6. The contract required Gulf to "manufacture, deliver and install" the RTO unit at the Pennsylvania Plaintiff's medical facility for total compensation of $810,200. *See id.* The contractual agreement between the parties consists of a purchase order, contractual terms and conditions, and Gulf's initial proposal or bid. *See id.* at ¶ 8. Gulf's proposal included Gulf's "design considerations." *See id.* at ¶ 10.

Gulf's knowledge and discovery of the issues or events relating to the RTO is established both by the allegations in Pennsylvania Complaint and ample correspondence and testing relating to deficiencies in the RTO unit in March, April, and May 2010. The Pennsylvania Complaint alleges that the RTO was defective from the date of original installation, February 26, 2010. *See*

*id.* at ¶¶ 10, 16 ("[F]rom February 26, 2010 to date the RTO has failed to properly function despite numerous efforts by both Pirimal and Gulf to repair and/or modify the equipment.") The RTO was never successfully commissioned. *See id.* at ¶ 15. The Pennsylvania Complaint continues:

> In late April 2010, the parties determined that the reason that the RTO failed to properly function was because Gulf Coast failed to properly design the RTO . . . . On ***April 25, 2010*** Gulf Coast advised Pirimal that it was not responsible for the failed design . . .

*See id.* at ¶¶ 17, 20 (emphasis added). The Pennsylvania Complaint concludes that Gulf did not deliver a properly functioning RTO and scrubber and refused to cure or repair the RTO at its own cost. *See id.* at ¶ 23.

These allegations are supported by extensive communications between Gulf and the Pennsylvania Plaintiff during this time period. *See generally* Ex. B-1.

As a result, the Pennsylvania Plaintiff asserted causes of action against Gulf for Breach of Contract based on an alleged failure to satisfy regulatory or Pennsylvania Department of Environmental Quality ("PADEP") requirements (Count 1), breach of contract for failure to perform under the parties' contract (Count II), breach of contract for failure to satisfy the express contractual warranties (Count III), quantum meruit and unjust enrichment (Count IV), professional negligence based on the design and manufacturing of the RTO unit (Count V), and professional negligence based on the design and manufacturing of the RTO's scrubber (Count VI). *See generally* Ex. A.

**B.     The Endurance Insurance Policies**

The relevant sections of the Endurance Policy are the Professional Liability ("PL") policy coverage and the Commercial General Liability ("GL") policy or coverage.

## 1.    The PL Policy

The RTO unit failure for which Gulf seeks coverage under the PL Policy is not within the scope of the Endurance Policy and is excluded from coverage by one or more exclusions, including but not limited to an exclusion titled, "Professional Liability Policy – Claims Made." This Exclusion reads:

> [Endurance] shall have no obligation whatsoever under this policy to make any payment of any kind for either damages, claims expense, or any coverage or payment provided pursuant to Section 1.B., Supplementary Coverages and Payments, or to arrange for, provide, or pay, for any defense, for:
> [. . . .]
> I.      Any claim arising from any of the following relative to any contract any insured has entered into with a client:
>> 1.      Any assumption of the client's sole negligence or legal liability by the insured; or
>> 2.      any failure by any insured to perform or provide a good or service by a date stipulated in a contract with a client; or
>> 3.      Any liquidated or stipulated damages under a contract with a client of any insured, unless the same type of damages would attach without the existence of the contract.

*See* Compl., Ex. C, § III.V.I (1-3) at p. 51.  The effective date of the PL Policy is May 26, 2010, which is retroactively modified by a handwritten notation to March 8, 2010.  *See id.* at p. 2.  The retroactive effective date applies only to the PL Policy and does not abrogate Gulf's duty to disclose its knowledge of a pending claim.  *Id.*

The PL Policy also required Gulf to disclose any knowledge of circumstances that could give rise to a claim.  Section I.A.5. states that Endurance "only" will pay damages under the policy "[i]f on the effective date of this policy, no insured had knowledge of any circumstances which could reasonably be expected to give rise to a claim." *See id*. at p. 43.  Similarly, the PL Policy required Gulf to disclose the possibility of the claim during the application process under Question 21 on the Endurance Application.  *See* Ex. B-1 at Endurance 0000031-36.  Gulf, in

completing the Application, stated it has no knowledge of any circumstances that may lead to an occurrence under the Endurance Policy.  *Id.* at Endurance 0000034, Q. 21.

### 2. The GL Policy

The GL Policy contains similar provisions relating to coverage.  For example, Section 1.A.1.B. states that the policy provides no coverage where the insured "becomes aware by any other means that . . . 'property damage' has occurred or has begun to occur."  *See* Compl, Ex. C at pp. 5-6.

The GL policy also contains Exclusion 2(l.), a "Damage to Your Work" exclusion.  *See id.* at p. 11.  Gulf also had an insurance policy issued by American Safety Indemnity Company ("ASI") immediately prior to applying for coverage with Endurance which includes a manuscript exception to this exclusion that expressly covers liability arising from the product here at issue, the thermal oxidizer.  In contrast, the Endurance Policy has no such exception to the exclusion and Plaintiff's Complaint does not contend that any such exception exists under the Endurance Policy.  The Endurance Policy was meant to preclude liability for damage to the RTO unit.

Gulf notified Defendant ASI of its claim, which ASI declined to cover under the primary policy on the basis that the claims were for breach of contract, breach of warranty, and unjust enrichment.  *See id.* at ¶ 11.  ASI declined coverage under the umbrella policy stating that damages were expected by Plaintiff.  *See id.*

Endurance initially defended under a reservation of rights letter dated January 17, 2011, then withdrew its defense on February 16, 2011 based on facts showing that Gulf is not entitled to defense or indemnity under the Endurance Policy.  *See* Ex. B-1 at ENDURANCE0000099-100; ENDURANCE0000089-93.  These facts include e-mail communication between Gulf and the Pennsylvania Plaintiff acknowledging that Gulf failed to properly commission the RTO

system on March 1, 2010, multiple "Produce Quality Deficiency Reports" all dated March 25, 2010 that reference and identify multiple problems with the RTO system, and e-mails discussing system defects with the RTO during February, March, April, and early May 2010. *See id.* Gulf even offered to settle the issue with the Pennsylvania Plaintiff by entering into arbitration. *Id.* The policy issued by Endurance to Gulf precludes, as a matter of law, any liability coverage under the Professional Liability policy based on (*i*) Gulf's failure to disclose the possibility of the claim during the application process and (*ii*) the fact that claim was first made before the policy period (or that Gulf otherwise had reason to know before the policy began that a claim would be filed).

Similarly, Endurance is entitled to judgment as a matter of law under the General Liability coverage part of the Endurance Policy because the Pennsylvania Complaint establishes that Gulf was aware that the RTO unit was defective prior to Gulf applying for the Endurance Policy. The Endurance Policy further precludes liability for damage to the RTO unit based on other policy exclusions detailed below. Endurance has therefore withdrawn its defense and seeks a grant of summary judgment holding that Endurance has no duty to defend or indemnify Gulf in connection with the underlying suit.

## V. ARGUMENT & AUTHORITY

### A. Texas Legal Standards

#### 1. Standards for Contract Interpretation

Under Texas law, insurance policies and indemnity agreements are contracts, and the general rules of contract interpretation apply. *Citigroup Inc v. Fed. Ins. Co.*, 649 F.3d 367, 371 (5th Cir. 2011) (citing *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 202 (Tex. 2004)); *Simmons v. Liberty Mut'l Fire Ins. Co.*, 420 Fed. Appx. 388, 391(5th Cir. 2011)

(unpublished opinion). The primary goal of contract interpretation is to give effect to "the written expression of the parties' intent." *See id.* (citing *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998)). The Court should consider the insurance contract as a whole and interpret the language by its plain meaning, rather than interpret a provision in isolation. *Simmons*, 420 Fed. Appx. at 391; *Don's Bldg. Supply Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 23 (Tex. 2008); *Acceptance Ind. Ins. Co. v. Melvin Alfredo Maltez*, No. 08-20288, 2009 U.S. App. LEXIS 14174, at *8 (June 30, 2009).

When an insurance contract uses unambiguous language, the contract must be enforced as written. *One Beacon Ins. Co.*, 267 S.W.3d at 23. An insurance policy's terms are unambiguous if they have a definite and certain legal meaning. *Travelers Lloyds Ins. Co. v. Pac. Employers Ins. Co.*, 602 F.3d 677, 681 (5th Cir. 2010). Ambiguities in insurance contracts giving rise to two reasonable interpretations, one providing and the other denying coverage, are read in favor of the insured under the doctrine of *contra proferentum*. *Carrizales v. State Farm Lloyds*, 518 F.3d 343, 346 (5th Cir. 2008). The doctrine only applies if the contract is ambiguous. *Id.* The mere fact that the parties disagree regarding the extent of coverage does not create an ambiguity. *Sharp v. State Farm Fire & Cas. Ins. Co.*, 115 F.3d 1258, 1261 (5th Cir. 1997). When "the policy language has only one reasonable interpretation, then it is not ambiguous, and courts must construe it as a matter of law." *See id.* (*citing Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006)). The policy language here at issue is unambiguous.

## 2. Standards for Determining the Duties to Defend and Indemnify

Endurance's duty to defend arises only if the factual allegations of the pleading against the insured are potentially covered by the policy. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997); *Farmers Tex. County Mut.*

*Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997). The legal theories asserted by the underlying plaintiffs do no determine whether or not there is a duty to defend. *Griffin*, 955 S.W.2d at 82; *Merchants Fast Motor Lines*, 939 S.W.2d at 141. Only the facts specifically alleged in the petition determine the defense obligation. While extrinsic evidence concerning whether an allege act occurred during an insurance policy period generally goes to liability and not coverage, a court may consider extrinsic evidence when the petition in the underlying suit does no allege sufficient facts to determine whether those facts are covered by the policy period. *State Farm Lloyds v. Kessler*, 932 S.W.2d 732, 736 (Tex.App.—Fort Worth 1996, writ denied).

The duty to indemnify, however, is governed by the facts established in the underlying suit. *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 744 (Tex. 2009) (quoting *Pine Oaks Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 656 (Tex. 2009)). The duty to indemnify thus "depends on whether the actions or omissions in the underlying suit are covered by the terms of the policy." *D.R. Horton-Tex., Ltd.*, 300 S.W.3d at 744. Under this standard, if the underlying litigation establishes facts that are outside the policy terms, the duty to indemnify is precluded as a matter of law.

## B. Gulf's Claims Fail As A Matter Of Law

In order to establish coverage under the Endurance Policy—as would be required for Gulf to prevail on its declaratory relief claim—Gulf must demonstrate, at a minimum, that (*i*) the potential claim relating to the RTO thermal oxidizer was not known to it before the policy incepted and that (*ii*) the claim was first made during the policy period. If ***either*** of these facts is not true, Endurance owes no coverage. Neither of these facts is true. Gulf must also show that the alleged liability and damages in the underlying Pennsylvania lawsuit are not covered by exclusions in the Endurance Policy. Again, Gulf cannot do so.

1.	**Gulf is Not Entitled to Coverage Under the Endurance PL Policy**

Endurance is entitled to summary judgment under the PL policy based on the following:

a.	**No coverage is available under the PL Policy for Gulf's Claims because the claims fall outside the policy period.**

Endurance is entitled to summary judgment because (*i*) Gulf's claims predate the inception of the policy period and (*ii*) Gulf failed to correctly acknowledge the potential claims on its application for insurance with Endurance.

(i)	*No coverage is available because Gulf's claims predate the Endurance Policy inception date.*

The loss at issue is fundamentally a professional liability loss, not a "property damage" loss, as the loss allegedly results from faulty design, according to the fact section in the Pennsylvania Complaint.  *See* Ex. A at ¶ 10 ("The Agreement [between Gulf and the Pennsylvania Plaintiff] required the RTO be designed to destruct chloro-fluorocarbons as stated in Gulf Coast's Design Considerations."); *see id.* at ¶ 17 ("[T]he parties determined that the reason that the RTO failed to properly function was because Gulf Coast failed to properly design the RTO . . ."). The two "professional negligence" counts both relate to alleged "design" deficiencies.  *See id.* at Count V, ¶¶ 52-55; Count VI, ¶¶ 56-60.  Indeed, each of the remaining causes of action is titled "Breach of Contract" (with the last cause of action titled, "Unjust Enrichment").  Because this is a professional design claim, the loss should be analyzed only under the Endurance PL policy, not the GL policy.

The Pennsylvania Plaintiff filed suit against Gulf in the underlying lawsuit on **May 12, 2010**.  *See* Ex. C.  Endurance issued a package GL, CPL, and PL policy to Gulf more than two weeks later on **June 1, 2010**.  *See* Compl. at Ex. C, p. 2.  The Endurance Policy has an effective date of **May 26, 2010**.  *Id.*  Section I.A.5 of the Endurance Professional Liability coverage part

expressly states that Endurance is not required to cover liability that Gulf reasonably expected to lead to a claim. *See id.* at 43 ("If on the effective date of this policy, no *insured* had knowledge of any circumstances which could reasonably be expected to give rise to a *claim.*)

The allegations in the Pennsylvania Complaint further establish that the claims at issue arose prior to Endurance issuing the policy on **June 1, 2010**. The Pennsylvania Complaint expressly states that the RTO unit was not properly functioning despite Gulf's attempt to repair the equipment as early as "**February 26, 2010.**" *See* Ex. A at ¶ 16. The Pennsylvania Complaint states that in "late **April 2010**" Gulf concluded that the RTO was not properly functioning because of a design defect. *Id.* at ¶ 16. The Pennsylvania Plaintiff filed its complaint against Gulf on **May 12, 2010**. *See* Ex. D. Thus, Gulf both (*i*) failed to disclose the possibility of the claim during the application process and (*ii*) Gulf had reason to know that claim for repairs relating to the RTO would be filed before the May 26, 2010 effective date but never informed Endurance of the claim. How do we know that Gulf "had reason to know" that the claim would be filed? Because Gulf acknowledged its potential legal liability to the Pennsylvania Plaintiff and offered to take the matter to arbitration as early as April 25, 2010. *See* Ex. B-1 at ENDURANCE0000581-82.. In fact, the Pennsylvania Plaintiff rejected Gulf's "settlement proposal" on May 5, 2010, stating that Gulf's settlement proposal was unacceptable because Gulf "was seeking to avoid all the contractual liability and performance guarantees that [Gulf] previously accepted. That is not acceptable to us." *See* Ex. B-1 at ENDURANCE0000563.

Moreover, the retroactive effective date for the Endurance PL Policy is March 8, 2009. *See* Compl., Ex. C. at p. 43. The early retroactive date does not change Gulf's duty to disclose its knowledge of an impending claim. There is no serious argument that Gulf knew about the

Pennsylvania Plaintiff's potential claims before the inception of the policy and during the time period that Gulf applied for the Endurance Policy.

This conclusion is buttressed by the express allegations in the Pennsylvania Complaint. The Pennsylvania Plaintiff alleges that Gulf failed to properly commission the system on March 1, 2010. Ex. A. at ¶ 15. The complaint further alleges that it was determined by the parties, in late April 2010, that the RTO thermal oxidizer was not properly design to destruct chlorofluoro carbons. Finally, the complaint alleges that on April 25, 2010 Gulf advised the Pennsylvania Plaintiff that it was not responsible for the failed design of the RTO unit. *See id.* at ¶ 20. The record contains multiple "Product Quality Deficiency Reports," all dated ***March 25, 2010 – more than two months before the policy incepted,*** that expressly reference and identify specific problems with the RTO system, including the quench box metal being too thin, the quench flow indicator jams giving false readings, problems with the spray nozzle, switch malfunction, scrubber re-circulator pump & motor, flow transmitter problems, PH Probe failure, tank leaks, caustic pump undersized, numerous plumbing leaks, and the scrubber level controls failing to automatically function. *See* Ex. B-1 at ENDURANCE0000138; ENDURANCE0000141; ENDURANCE0000144; ENDURANCE0000147; ENDURANCE0000150; ENDURANCE0000153; ENDURANCE0000156; ENDURANCE0000159; ENDURANCE0000162; ENDURANCE0000165; ENDURANCE0000168; ENDURANCE0000171.

The record also includes volumes of correspondence, including e-mails that expressly reference and discuss multiple problems with the thermal oxidizer system occurring during February, March, April, and early May, 2010. *See generally* Ex. B-1. This evidence is uncontroverted. Gulf's lead employee on correcting problems with the RTO unit, Ken Rogers,

e-mailed the Pennsylvania Plaintiff on multiple occasions with proposed modifications and repairs to the RTO. *See id* at ENDURANCE0000569; ENDURANCE0000583-84; ENDURANCE0000566-68. The Pennsylvania Plaintiff sent Gulf a detailed response in an e-mail and attached letter on April 30, 2010 outlining in the same types of problems with the RTO unit and requesting that Gulf take immediate steps to correct the defective equipment. *See id.* Gulf began "documenting a time line" to defend itself by April 27, 2010. *See id.* at ENDURANCE0000566-68. On April 26, 2010, a Gulf employee states that "Despite that the design might not have been that bad, this system was still supplied with many deficiencies." *See id* at ENDURANCE0000577.

Two days earlier, on April 24, 2010, the Pennsylvania Plaintiff notified Gulf that it was contacting an attorney regarding the claim. *See id* at ENDURANCE0000582. Gulf's Ken Rogers responded on April 25, 2010, replying that Gulf would "correct the design issues at Primal Critical Care." *See id.* at ENDURANCE0000581-82. Gulf sent this e-mail after previously sending "modification proposals" to correct the problem. *Id.* at ENDURANCE0000583. Internal Gulf e-mails indicate that Gulf believed that certain subcontractors working for Gulf "didn't have a clue" and there was a need to modify the RTO to make it function. *Id.* at ENDURANCE0000027-28. Other Gulf e-mails concede in April 2010 that it had determined why the RTO and scrubber did not work by that time. Problems relating to the system as a whole were discussed between Gulf and the Pennsylvania Plaintiff in March 2010. *See id.* at ENDURANCE0000695-96; ENDURANCE0000702. By March 25, 2010, Gulf's Randy Gload concedes that the "product fell off the walls." *See id.* at ENDURANCE0000702.

Gulf, in fact, requested that the Pennsylvania Plaintiff enter into arbitration to resolve legal claims on May 5, 2010. *See id.* at ENDURANCE0000563; *see also* ENDURANCE0000581.

Thus, the record establishes that the Pennsylvania Plaintiff's claim was made against Gulf before the inception date of the Endurance Policy. Moreover, the record shows that Gulf knew of the circumstances that reasonably could have been expected to give rise to the claim at issue prior to the effective date of the policy. The pre-litigation interactions, correspondence, technical documents, and the filing of the Pennsylvania Complaint are not contested by Gulf.

> ### (ii) *No coverage is available because Gulf failed to correctly acknowledge the potential claims on its application for insurance with Endurance.*

Endurance is entitled to summary judgment as a matter of law because Gulf failed to disclose its knowledge of a potential claim relating to the design and repair of the RTO unit in the underlying Pennsylvania Lawsuit in their application for coverage. *See Byrd & Assocs. PLLC v. Evanston Ins. Co.*, 367 Fed. Appx. 550, 551 (5th Cir. 2010) (unpublished opinion).[2] The Texas Insurance Code allows an insurer to void coverage based on a misrepresentation on an insurance application if the misrepresentation was material to the risk and contributed to the event on which the policy became due. *See Gouverne v. Care Risk Retention Group, Inc.*, No. 2-

---

[2]     In *Byrd*, an insured-law firm filed a claim for declaratory judgment and injunctive relief against its malpractice insurer, Evanston Insurance Co. ("EIC"). The insured-law firm alleged that the insurer breached its contractual obligation to defend and indemnify them in a legal malpractice suit. *Id.* The insured-firm submitted an application to EIC for malpractice insurance on November 13, 2002. *See id.* On the application, the insured-firm indicated that it was unaware of "any act that may reasonably be expected to form the basis of a claim against them." The insurer-EIC issued the policy with an effective date of February 28, 2003, and renewed it effective the same date in 2004 and then again in 2005. *Id.*

The insured-firm was subsequently sued for malpractice based on acts that occurred either in 2001 or 2003. *Id.* at 553. The district court granted summary judgment to the insurer EIC, finding that regardless of whether the facts giving rise to the claim occurred in 2001 or 2003, both "occurred before the application for the renewal policy." *Id.* The court found that the insured-firm failed to disclose their knowledge of the act that formed the basis of their claim on their application for coverage and, therefore, the insurer-EIC had "no obligation to provide coverage." *Id.*

07-206, 2008 U.S. Dist. LEXIS 38869, at *11-12 (S.D. Tex. May 13, 2008). The Texas Supreme Court has held that five elements must be pled and proved before an insurer may deny coverage because of a misrepresentation on an application for insurance: (1) a representation by the insured, (2) falsity of the representation; (3) reliance thereon by the insurer; (4) intent to deceive by the insured, and (5) materiality of the representation. *Legion Ins. Co. v. Tex. Timber Group*, No. 3:99-CV-0932, 2000 U.S. Dist. LEXIS 14488, at *9 (Sept. 29, 2000) (granting summary judgment) (citing *Mayes v. Mass. Mut. Life Ins. Co.*, 608 S.W.2d 612, 616 (Tex. 1980)).

The Endurance PL Policy covers losses only if the claim for damages in the underlying suit is (*i*) made against Gulf during the policy period or (*ii*) if Gulf had no knowledge of any circumstances which could reasonably be expected to give rise to a claim. Gulf's application for coverage, titled Environmental Service Providers Application (the "Application"), is dated March 19, 2010. *See* Ex. B-1 at Endurance 0000031-36. There is ample evidence in the record that Gulf knew by this time that the Pennsylvania Plaintiff had a claim, including the fact that the Pennsylvania Complaint states that the PTO system failed to function from the date it was installed on February 26, 2010 and Gulf failed to commission the system on March 1, 2010. *See* Ex. A at ¶¶ 15-16; *see generally* Ex. B-1. Gulf was required to disclose its knowledge of any circumstances that could give rise to a claim:

> **21.     In the past 3 years, has any member of your firm or a related entity [*sic*] aware of any circumstances that could result in a claim, suit or notice of incident being brought against them?**
>
>            If yes, please provide full details on the same basis as the above requirements (use additional paper if necessary.

*See* Ex. B-1 at Endurance 0000034. Despite the evidence in the record and the allegations stated in the Pennsylvania Compliant, Gulf answered Question 21 "No." *See id.*

Even assuming Gulf was somehow unaware of the circumstances at issue, Gulf had a duty to supplement its application for insurance with Endurance to notify Endurance of a potential claim or circumstances that could result in a claim but failed to do so.

It is well-settled law that "if the answers to the questions in the [insurance] application were untrue *at the time they were given* the untrue answers constituted misrepresentations." *Tex. Timber Group*, 2000 U.S. Dist. LEXIS 14488, at * 9 (quoting *Mayes*, 608 S.W.2d at 616). The PL Policy specifically excludes coverage for such loss. The undisputed and competent summary judgment evidence shows that Gulf represented that it had no knowledge of a circumstance giving rise to a potential claim despite the fact that the Pennsylvania Plaintiff filed suit on May 11, 2010, some 15 days before the May 26, 2010 effective date on the policy. *See* Ex. D at p. 8. The Pennsylvania Complaint further states that Gulf was aware of the issue as early as February 2010 and concluded that the RTO unit was defectively designed in April 2010. *See* Ex. A at ¶¶ 12, 20. Based on the allegations stated in the four-corners of the Pennsylvania Complaint, evidence in the record, and Gulf's subsequent misrepresentations in the Application, Endurance is not obligated to defend and indemnify Gulf and is entitled to summary judgment as a matter of law.

### b. Section III.V.1 of the PL Policy Bars Coverage for Gulf's Failure to Provide a Functioning RTO by the Contractual Deadline.

The PL Policy by its express terms states that Endurance "shall have no obligation whatsoever" to defend or indemnify for loss caused by "[a]ny failure of the [Gulf] to perform or provide a good or service by a date stipulated in a contract with a client." *See* Compl. at Ex. C, § III.V.I. at p. 51. The Pennsylvania Complaint states that Gulf had 30 days to commission the RTO unit and, if commissioning failed, three months to re-commission. Ex. A at ¶¶ 13, 14, 21. The Pennsylvania Complaint also cites Gulf's failure to provide a properly designed RTO within

these contractual deadlines.  *Id.*  The damages alleged in the Pennsylvania Complaint are expressly predicated on contractual provisions in the parties' underlying agreement that provides the Pennsylvania Plaintiff the right to assert damages for the entire costs of the RTO and consequential damages resulting from Gulf's inability to make repairs within these contractual deadlines.  *See id.* at ¶¶ 21, 22.  Under the PL Policy, a duty to defend against damages for Gulf's failure to provide the RTO by the dates stipulated in Gulf's contract with the Pennsylvania Plaintiff is expressly excluded.  Endurance is entitled to summary judgment on this issue.

### 2.     Gulf is Not Entitled to Coverage Under the GL Policy as a Matter of Law.

Even if the loss is characterized as one seeking to impose liability because of property damage instead of a design defective (and it is not) and is analyzed under the Endurance GL policy, Endurance is entitled to summary judgment based on certain policy exclusions and well-settled Texas legal doctrine.

#### a.     Section I.A.1.B. of the General Liability policy bars coverage because Gulf was aware that property damage had occurred or began to occur before Gulf applied for coverage and prior to the effective date.

Section I.A.1.B(3) precludes coverage because Gulf was aware that the RTO unit was damaged or that the RTO unit was not functioning before the Endurance policies' effective date.  *See* Compl., Ex. C. at pp. 5-6.  This section states that coverage exists for "property damage" "only if":

[. . . .]

> (3)     Prior to the policy period, no insured . . . , knew that the . . . "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such . . . "property damage" during or after

the policy period will be deemed to have been known prior
to the policy period.

*See id.*

Under the plain language of the GL Policy, the fact that Gulf knew about the alleged

"property damage" prior to applying for the Endurance Policy means that Gulf is "deemed" to

have known about the RTO unit claim prior to the policy period. Accordingly, Endurance is

entitled to summary judgment.

### b. Endurance is entitled to summary judgment under the fortuity doctrine.

Endurance owes no duty to defend or indemnify under the "fortuity doctrine." *See Essex*

*Ins. Co. v. Redtail Prods., Inc.*, 1998 U.S. Dist. LEXIS 18507, * (N.D. Tex. Nov. 12, 1998).

"Fortuity is an inherent requirement of all risk insurance policies." *Id.* (quoting *Two Pesos, Inc.*

*v. Gulf Ins. Co.*, 901 S.W.2d 495, 501 (Tex. App. 1995, no writ). Under the fortuity doctrine, an

insurer has no duty to defend when the insured is, or should be, aware of a loss in progress:

> The fortuity doctrine . . . incorporates the "known loss" and "loss
> in progress" principles. These aspects of the fortuity doctrine
> focus on the proposition that insurance coverage is precluded
> where the insured is, or should be aware of an ongoing loss or
> known loss at the time the policy is purchased. The "loss in
> progress" principle is recognized as part of standard insurance law.
> **An insured cannot insure against something that has already**
> **begun and which is known to have begun**. Texas has long
> recognized that it is contrary to public policy for an insurance
> company to knowingly assume a loss occurring prior to its
> contract.

*Id.* at *10-11 (emphasis added). The *Two Pesos* court ultimately concluded that the insured in

that case was not covered by an insurance policy for claims alleging trade dress infringement

because its wrongful activities began prior to its purchase of the insurance. *See Two Pesos*, 901

S.W.2d at 501. The court noted that "the purpose of insurance is to protect insureds against

unknown risks." *Id.* (quoting *Appalachian Ins. Co. v. Liberty Mut. Ins. Co.*, 675 F.2d 56, 63 (3d Cir. 1982) (emphasis added) (internal quotations omitted)).

Here, coverage for Gulf's defective design should be precluded because the claim constitutes a known loss or loss in progress that Gulf was aware of as early as February 2010. *See* Ex. A at ¶¶ 16-17. Gulf cannot insure against the cost of repairs or replacement for the RTO unit because the Pennsylvania Complaint and the record expressly shows that Gulf knew the RTO unit was defective before applying for insurance. Endurance has no duty to defend or indemnify Gulf and is entitled to summary judgment under the fortuity doctrine.

      **c.**      **Exclusion 2(l.) for damage to "your work" precludes a duty to defend or indemnify in connection with repairs to the RTO unit.**

Exclusion 2(l.) in the GP policy precludes coverage for liability for property damage "to 'your work' arising out of it or any party of it and included in the 'products-completed operations hazard.'" *See* Compl. at Ex. C, p. 11. This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontract." *Id.* The Policy defines "your work" as follows:

    a.    "Your work":

        (1)    Work or operations performed by you or on your behalf; and

        (2)    Materials, parts or equipment furnished in connection with such work or operations

    b.    Includes:

        (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

        (2)    The providing of or failure to provide warnings or instructions.

*See id.* at §5(22.), p. 29.

Under this Exclusion, coverage for "property damage" to the insured's completed work is precluded. *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 11 (Tex. 2007). The Exclusion is one of several putative "business risk" or "your work" exclusions which preclude coverage for the cost to correct "inferior workmanship by the policyholder," such as the cost to repair or replace the insured's own work. *See Lamar Homes*, 242 S.W.3d at 13-14; *Jim Johnson Homes, Inc. v. Mid-Continent Cas. Co.*, 244 F. Supp. 2d 706, 717 (N.D. Tex. 2003) (where the only property damaged was the property on which insured building contractor was working, "your work" exclusions precluded coverage); *T. C. Bateson Constr. Co. v. Lumbermens Mut. Cas. Co.*, 784 S.W.2d 692, 694-95 (Tex. App.—Houston [14th Dist.] 1989, writ denied) ("your work" exclusion precluded coverage for repair and replacement costs of general contractor that had improperly installed marble on building). These risks are treated differently because "the insured can control the quality of the goods and services he supplies, while accidental injury to property or persons exposes him to almost limitless liability." *T. C. Bateson Constr. Co.*, 784 S.W.2d at 694-95.

The Pennsylvania Complaint alleges damages in the form of repairs to Gulf's own defective work, *i.e.*, the RTO unit. And there is no evidence that the damage was caused by a subcontractor. Thus, the exception relating to subcontractors does not apply and the Exclusion precludes defense and indemnity coverage for repair costs alleged in that suit.

### d. The contractual liability exclusion precludes a duty to defend or indemnify Gulf because its liability to the Pennsylvania Plaintiff is contractual in nature.

The GL Policy covers only "property damage" and "bodily injury" caused by an "occurrence." *See* Compl., Ex. C at p. 5. The GL policy's contractual liability exclusion,

Exclusion 2.b., precludes coverage for property damage "for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." *Id.* Exclusion 2.b. excepts from the exclusion liability for damages: "(1) That the insured would have in the absence of a contract or agreement; or (2) Assumed in a contract or agreement that is an 'insured contract' provided the . . . 'property damage' occurs subsequent to the execution of the contract or agreement." *Id.*

The contractual liability exclusion applies to claims that sound in contract and is not limited to indemnity or hold harmless agreements. *See Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 129-30, n. 9 (Tex. 2010) The Texas Supreme Court stated that the exclusion,

> Considered as a whole, . . . provide[s] that the policy does not apply to bodily injury or property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement, except as enumerated, specific types of contracts called 'insurance contracts' and except for instances in which the insured would have liability apart from the contract.

*Gilbert Tex. Constr., L.P.*, 327 S.W.3d at 126. The Court concluded that the contractual liability exclusion "means what it says," and "applies when the insured assumes liability for bodily injuries or property damages by means of the contract, unless an exclusion to the exclusion brings a claim back into coverage or unless the insured would have liability in the absence of the contract or agreement." *Id.* at 132.

Under *Gilbert Tex. Constr.*, this exclusion precludes a duty to defend and indemnify because the claims asserted against Gulf in the Pennsylvania Lawsuit were contractual in nature. The only damages alleged against Gulf arise from the contract for the RTO unit and are limited to contractual remedies. *See* Ex. A at ¶ 60. Thus, the exclusion precludes indemnity coverage and the duty to defend.

**(i)** **As a matter of law, the "absence of contract" exception does not apply because the damage was limited to the subject matter of the contract.**

Texas courts hold that even if tort claims are alleged against the insured, the exclusion applies if "the only loss or damage [alleged] is to the subject matter of the contract." *See, e.g., Ewing Constr. Co. v. Amerisure Ins. Co.*, No. C-10-256, 2011 U.S. Dist. Lexis 45827, at *10-12 (S.D. Tex. Apr. 28, 2011) (Order on Motions for Summary Judgment) (holding that allegations of negligence in connection with defective construction of a tennis facility by insured contractor were nevertheless excluded by the contractual liability exclusion) (citing *Century Sur. Co. v. Hardscape Constr. Specialties, Inc.*, 578 F.3d 262, 267 (5th Cir. 2009) (holding that allegations of negligence in connection with insured's defective construction of a swimming pool facility were excluded by the contractual liability exclusion and not within the "insured contract" exception because damage was limited to the subject matter of the contract)).

Here, because the Pennsylvania Complaint and the record eliminates any possibility that Gulf has liability outside the scope of its contractual obligations, as a matter of law, the "absence of contract" exception does not apply and the contractual liability exclusion precludes a duty to defend or indemnify Gulf. There are no damages alleged in the Pennsylvania Complaint that do not sound in contract. *See, e.g.*, Ex. A at ¶ 60. The Pennsylvania Plaintiff even stated it would not agree to Gulf's proposal for arbitration because Gulf's proposal would allow it to avoid "all the contractual liability and performance guarantees." *See* Ex. B-1 at ENDURANCE0000563.

To the contrary, the Pennsylvania Complaint alleges damages for money paid under the contract, expenses to cure the breach of contract and purchase a new PTO scrubber, repair damages and expenses. "The nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of a contract itself the action

sounds in contract alone." *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d at 495 (quoting

*Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex.1986)); *Deaton v. United Mobile*

*Networks, L.P.*, 926 S.W.2d 756, 760. Here, the alleged damages in the Pennsylvania Complaint

are for economic loss to the subject of the contract–the damages are quintessentially "benefit of

the bargain" and "out of pocket" or restitutionary damages under Texas law. *See, e.g., Tacon*

*Mechanical Contractors, Inc. v. Grant Sheet Metal, Inc.*, 889 S.W.2d 666, 670 (Tex. App.—

Houston [14[th] Dist.] 1994, writ denied) (characterizing benefit of the bargain damages as those

designed to place the injured party in the same economic position that it would have occupied if

the breaching party had performed the contract). On this record, the "absence of a contract"

exception does not apply and Endurance is entitled to summary judgment on this issue as a

matter of law.

> **(ii)** **The "insured contract" exception does not apply as a matter of law because Gulf did not assume the liability of another party.**

The contractual liability exclusion's exception for liability "assumed in a contract or

agreement that is an 'insured contract'" does not apply, as a matter of law. The definition of

"insured contract" in the GL policy includes:

> That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for . . . 'property damage' to a third person or organization, provided the . . . 'property damage' is caused, in whole or in part, by you or by those acting on your behalf.

*See* Compl., Ex. C at §V.9.f., p. 25. The "insured contract" exception plainly states that it

applies only to the insured's liability under an indemnity or hold harmless agreement. *See*

*Gilbert Tex. Constr.*, 327 S.W.3d at 128, 130-31 ("the insured-contract exception brings back

into coverage contracts in which the insured assumes the tort liability of another" under

"specified types of contracts . . . including indemnity agreements."). Here, Gulf's liability to the

Pennsylvania Plaintiff is based on a direct contract. Therefore, there is no exclusion exception as a matter of law.

> **e.** **Exclusion 2.m precludes a duty to defend or indemnify for damages as a matter of law.**

Exclusion 2.m. is titled, "Damage to Impaired Property or Property Not Physically Injured," and precludes defense and indemnity coverage for repair costs. Exclusion 2.m precludes coverage for property damage "to 'impaired property' or property that has not been physically injured, arising out of . . . a defect, deficiency, inadequacy or dangerous condition in . . . "your work"; or . . . a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms." *See* Compl., Ex. C at p. 11. §I.A.2.m. The policy defines the term "impaired property" as:

> [T]angible property, other than "your product" or "your work", that cannot be used or is less useful because:
>
> a.  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
>
> b.  You have failed to fulfill the terms of the contract or agreement;
>     If such property can be restored to use by:
>
> If such property can be repaired by:
>
> a.  The repair, replacement, adjustment or removal of "your product" or "your work"; or
>
> b.  Your fulfilling the terms of the contract or agreement.

*Id.* at 24-25.

Exclusion 2.m. applies to loss of use claims for tangible property that has not been physically injured. *Lennar Corp. v. Great Am. Ins. Co.*, 200 S.W.3d 651, 687 (Tex. App.—Houston [14[th] Dist.] 2006, pet. denied); *Admiral Ins. Co. v. Little Big Inch Pipeline Co. Inc.*, 523

F. Supp. 2d 524 (W.D. Tex. 2007) (exclusion precluded coverage for diminution in value claims arising out of insured subcontractor's defective work in turning off natural gas service to a mobile home park because no property had been physically injured). Exclusion 2.m. applies "to both 'impaired property' or 'property that has not been physically injured'." *Mid-Continent Cas. Co. v. Camaley Energy Co., Inc.*, 364 F. Supp. 2d 600, 608 (N.D. Tex. 2005) (holding that exclusion 2.m. applied, even if the damage was not to "impaired property," to the insureds' negligent drilling of an oil well which crossed into another leasehold, causing plaintiffs to lose an oil/gas leasehold).

The RTO unit was not alleged to be physically injured, it was merely defectively designed and constructed, causing the Pennsylvania Plaintiff to lose use of it until repairs were made to the RTO unit. Thus, Exclusion 2.m. precludes coverage for repair costs to the RTO unit. Under the allegations in the Pennsylvania Complaint, the RTO unit was "impaired property" because, during repairs, it was "tangible property" that could not "be used or [was] less useful because it incorporated" Gulf's "defective, deficient, inadequate or dangerous" work. Accordingly, Gulf "failed to fulfill the terms of the contract or agreement" requiring it to repair its defective work and no coverage exists.

      **f.**     **The Endurance Policy precludes coverage for attorneys' fees as a matter of law.**

The Endurance Policy covers only amounts Gulf must pay "as damages" because of "property damage" caused by an "occurrence." *See* Ex. at p. 28. Any such attorney's fees awarded to the Pennsylvania Plaintiff would not satisfy those requirements as a matter of law.

First, any attorney's fees are excluded from coverage because they are not payable "as damages" as required by the insuring clause. *Butler & Binion v. Hartford Lloyd's Ins. Co.*, 957 S.W.2d 566, 570 (Tex. App.—Houston [14th Dist.] 1995, writ denied). As a general rule,

attorneys' fees awarded to a complaining party and against an insured are not "damages" under standard liability parties. *See, e.g., City of Sandusky, Ohio v. Coregis Ins. Co.*, 192 Fed. Appx. 355 (6th Cir. 2006) (unpublished opinion).

Second, attorneys' fees incurred by a third party and awarded against the insured are not "costs" under the Supplementary Payments provision. *See* Compl., Ex. C, § 1.d at p. 6-7. Nor do such third party attorneys' fees qualify as "costs" under Section 1.e. of the Endurance Policy, which provides for payment for costs taxed against the insured in the suit. *See, e.g., CIM Ins. Corp. v. Masamitsu*, 74 F. Supp. 2d 975 (D. Haw. 1999) (attorney fees awarded against insured were not within liability insurance policy's coverage provision for "[a]ll costs taxed against the insured in any suit we defend."). Under these sections, attorneys' fees are not covered as a matter of law.

## IV.    CONCLUSION

Defendant Endurance American Specialty Insurance Company ("Endurance") is entitled to summary judgment on all claims asserted by Plaintiff Gulf Coast Environmental Systems, Inc. ("Gulf")  There is no dispute that defendant American Safety Indemnity Company ("ASI") issued a policy covering the period from March 8, 2009 to May 26, 2010, the time period in which Gulf's claims arose. The allegations in the Pennsylvania Complaint show that the claims arose in the underlying lawsuit as early as February 26, 2010, with additional milestone dates in March and April 2010, well in advance of the inception of the Endurance Policy.

The dates contained in the Pennsylvania Complaint are reinforced by the record, which shows that Gulf offered to settle claims against it in the underlying Pennsylvania Lawsuit in April and early May 2010, even requesting that the parties arbitrate their dispute some three weeks prior to the May 26, 2010 inception date for the Endurance policy. Gulf's claim is made

before this period, therefore Endurance owes no duty to defend or indemnify. This conclusion is further established by the fact that Gulf incorrectly stated on its application for insurance that it knew of no pending claims when the evidence in the record conclusively shows otherwise. The Endurance policy precludes coverage for claims that were anticipated before the policy incepted and Texas law precludes coverage for a "known loss."

Moreover, coverage under the Endurance GL policy is precluded by a host of exceptions and most fundamentally by the undisputed fact that Gulf's claim is rooted in professional negligence, not property damage. In sum, Gulf's claims under the Endurance PL Policy and the GL Policy are precluded as a matter of law. Accordingly, Gulf is entitled to summary judgment.

DATED and FILED on March 16, 2012.

Respectfully submitted,

/s/ Steven B. Harris
SQUIRE SANDERS & DEMPSEY (US) LLP
Steven B. Harris (TBN 09093200)
Southern District ID No. 3920
Eric J. Cassidy (TBN 24031807)
Southern District ID No. 30001
Amanda L. Dodds (TBN 24060935)
Southern District ID No. 1155447
6200 Chase Tower
600 Travis Street
Houston, Texas 77002
Tel.:    713.546.5850
Fax:    713.546.5830

Of Counsel:

Ethan A. Miller
SQUIRE, SANDERS & DEMPSEY (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111
Tel:    415.954.0200
Fax:    415.393.9887

COUNSEL FOR DEFENDANT
ENDURANCE AMERICAN SPECIALTY
INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on counsel of record via the U.S.D.C., Southern District of Texas, Electronic Case Filing system this 16th day of March, 2012:

Charles S. Fuquay
Jones, Allen & Fuquay, L.L.P.
8828 Greenville Avenue
Dallas, Texas 75243
*Counsel for Plaintiff Gulf Coast Environmental Systems, LLC*

Lauren N. Pierce
Cooper & Scully, P.C.
Founders Square
900 Jackson Street, Suite 100
Dallas, Texas 75202
*Counsel for Defendant American Safety Indemnity Company*

/s/ Steven B. Harris
Steven B. Harris