FIN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GULF COAST ENVIRONMENTAL SYSTEMS, LLC | § § § | |
| Plaintiff, | § § | |
| vs. | § § | |
| AMERICAN SAFETY INDEMNITY COMPANY and ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY | § § § | CIVIL ACTION NO. 4:11-cv-02753 |
| Defendants. | § § § | |

## BRIEF IN SUPPORT OF PLAINTIFF GULF COAST ENVIRONMENTAL SYSTEMS, LLC'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT

JONES, ALLEN & FUQUAY, L.L.P.
8828 Greenville Avenue
Dallas, Texas 75243
(214) 343-7400 (Telephone)
(214) 343-7455 (Facsimile)

Charles S. Fuquay
State Bar No. 07552400
Federal ID No. 37786
ATTORNEYS FOR PLAINTIFF,
GULF COAST ENVIRONMENTAL SYSTEMS, LLC

# TABLE OF CONTENTS

STATEMENT OF THE CASE ........................................................................................................5

FACTUAL BACKGROUND .........................................................................................................6

RELIEF SOUGHT AND SUMMARY OF ARGUMENT ........................................................................7

STANDARD OF REVIEW ...........................................................................................................8

APPLICABLE LAW ...................................................................................................................8

BURDEN OF PROOF AND CONTRACT INTERPRETATION ................................................................9

THE "CONTRACT" ISSUE .......................................................................................................10

THE PENNSYLVANIA LAWSUIT IS COVERED BY COVERAGE A OF THE ASI POLICY ...................11

    i.    The alleged defects constitute an "accident" or "occurrence" ........................................13

    ii.    The Business Risk Analysis ..........................................................................................14

    iii.    No exclusion applies as the damage (or a portion of the damage) was caused by the work performed by a Subcontractor ........................................................................................16

    iv.    No exclusion applies as the RTO was manufactured, ..............................................17

    sold and distributed by Gulf Coast ....................................................................................17

THE PENNSYLVANIA LAWSUIT IS ALSO A COVERED PROFESSIONAL LIABILITY CLAIM .............18

THE COMPLAINT DOES NOT ALLEGE AN INTENTIONAL TORT .....................................................20

GULF COAST PROMPTLY GAVE NOTICE TO ASI OF THE PENNSYLVANIA LAWSUIT SERVED UPON IT .....22

DUTY TO DEFEND ARISES IF ANY COVERED CLAIM ALLEGED ...................................................31

ASI'S INVALID AFFIRMATIVE DEFENSE..................................................................................32

ATTORNEY'S FEES.................................................................................................................33

SUMMARY JUDGMENT STANDARD ..........................................................................................33

CONCLUSION ........................................................................................................................33

PRAYER.................................................................................................................................33

# TABLE OF AUTHORITIES

## CASES

*Barcello v. Elliott*, 923 S.W.2d 575, 579 (Tex. 1996)..............................................18

*Bituminous Cas. Corp. v. Maxey*
110 S.W.3d 203, 208-09 (Tex. App. - Houston [1st Dist.] 2003, pet. denied)..........9

*Brown v. City of Houston, Tex.*, 337 F.3d 539, 540-41 (5th Cir.2003) .......................33

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ............................33

*East Texas Medical Center v. Lexington Ins. Co.*, 2011 U.S. Dist. LEXIS 18918 ....................................29

East Texas Medical Center v. Lexington Ins. Co., 575 S.W.3d 520 (5th Cir. 2009) ....................................28

*Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) .............................8

*Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006) .................................10

*Guar. Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998) (applying Texas law.)..................9

*Guide One Elite Ins. Co. v. Fielder Rd. Baptist Church v.*, 197 S.W.3d 310 (Tex. 2006)........................32

*Hager v. Romines*, 913 S.W.2d 733, 734 (Tex. App. - Fort Worth 1995, no writ.)....................................19

*Hartman v. Urban*, 946 S.W.2d 546, 548-550 (Tex. App. - Corpus Christi, 1997, no writ.) ....................18

*Haynes v. Farmers Ins. Exchange*, 89 P 3d 381, 385 (Cal. 2004)....................................10

*Hyde v. Hoffmann-La Roche, Inc.*, 511 F.3d 506, 510, n. 28 (5th Cir. 2007) ....................................8

*Kimleco Petroleum v. Morrison & Shelton*, 91 S.W.3d 921, 924 (Tex. App. - Fort Worth 2002, pet. denied.)....................................19

*KPMG, v. Harrison County Housing Finance Corp.* 988 S.W.2d 746, 750 (Tex. 1999) ...........................18

*Lamar Homes, Inc. v. Mid-Continent Casualty Company*, 242 S.W.3d 1 (Tex. 2007).13, 14, 15, 16, 17, 18

*Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 350 (5th Cir.2005) (applying Texas law) ...................30, 31

*MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999)....................................9

*Mellon Bank v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1008 n.6 (3rd Cir. 1980.) ....................................33

*Murphy v. Campbell*, 964 S.W.2d 265, 268 (Tex. 1997) ....................................18

*Myers v. Central Fla. Invs.*, 592 F.3d 1201, 1224 (11th Cir. 2010) ............................................33

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex. 1995) .................9

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991)...10

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997) ................................................................................................................................31

*Northfield Ins. Co. v. Loving Home Care, Inc.* 363 F.3d 523, 527 (5th Cir. 2004.) .......................................8

*PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W. 3d 630, 636-37 (Tex. 2008) ...................................25, 27

*Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654 (Tex. 2009) ........................31

*Prodigy Communications Corp. v. Agricultural Excess & Surplus Ins. Co.*, 288 S.W.2d 374, 375 (Tex. 2009) ...........................................................................................................................26, 28

*Progressive County Mut. Ins. Co. v. Sink*, 107 S.W.3d 547, 551 (Tex. 2003) ..............................9

*Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003) .........................9

*Ramsay v. Maryland American General Ins. Co.*,533 S.W.2d 344, 349 (Tex. 1976) ...............................10

*Ryan v. Morgan Spear Associates, Inc.*, 546 S.W.2d 628, 680-681 (Tex. App.- Corpus Christi, 1977, writ ref., n.r.e.) ...........................................................................................................................18

*Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 390-91 (5th Cir.2003) ...............................8

*Sigma Marble and Granite-Houston v. Amerisure Mutual Insurance Company*, 2010 WL 5464257 (S.D. Tex.- Houston Division) .............................................................................................................16

*Smith v. Heard*, 980 S.W.2d 693, 697 (Tex. App. - San Antonio 1998, pet. denied) ................18

*TIG Ins. Co. v. North American Van Lines*, 170 S.W.3d 264, 271 (Tex. App.– Dallas 2005)....................10

*Trinity Universal Ins. Co. v. Empl'rs Mut. Cas. Co.*, 592 F.3d 687, 691-92 (5th Cir. 2010) ......................9

*Underwriters at Lloyds Sydicate 242 v. Turtle Creek Partnership, Ltd.*, 716 F. Supp. 633 (S.D. Tex.- Houston 2010) .....................................................................................................................26

*Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 202 (Tex. 2004) ...........................10, 31

*Venture Encoding Serv., Inc. v. Atl. Mut. Cas. Co.*, 107 S.W.3d 729, 733 (Tex. App.-Fort Worth 2003, pet. denied) ...........................................................................................................................9

*Zurich Am. Ins. Co. v. Nokia, Inc.*,268 S.W.3d 487, 490-91 (Tex. 2008) ...................................32

# OTHER AUTHORITIES

Tex. Ins. Code § 21.42 .................................................................................................................9

Tex. Ins. Code § 21.55 ...........................................................................................................13, 32

Tex. Ins. Code § 542.060 .......................................................................................................13, 32

Tex. Ins. Code Ann. § 554.002 .................................................................................................9

Texas Department of Insurance Checklist..................................................................................29

Texas Department of Insurance Order 23080 ...........................................................................29

BRIEF IN SUPPORT OF PLAINTIFF GULF COAST ENVIRONMENTAL SYSTEMS, LLC'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT – Page iv

J:\CSF\Gulf Coast Environmental Systems, LLC\Insurance coverage suit\Amended MSJ Brief 5.3.12.docx

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GULF COAST ENVIRONMENTAL SYSTEMS, LLC | § § § | |
| Plaintiff, | § § | |
| vs. | § § | |
| AMERICAN SAFETY INDEMNITY COMPANY and ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY | § § § § | CIVIL ACTION NO. 4:11-cv-02753 |
| Defendants. | § § | |

---

## BRIEF IN SUPPORT OF PLAINTIFF GULF COAST ENVIRONMENTAL SYSTEMS, LLC'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT

---

TO THE HONORABLE KEITH P. ELLISON,
UNITED STATES DISTRICT JUDGE

COMES NOW Gulf Coast Environmental Systems, LLC, (hereinafter referred to as "GULF COAST") and makes and files this Brief in Support of Plaintiff's Amended Motion for Partial Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and in support thereof would respectfully show unto the Court the following:

### STATEMENT OF THE CASE

1.       This insurance coverage controversy arises out of an underlying lawsuit styled "Piramal Critical Care, Inc. v. Gulf Coast Environmental Systems, Inc." filed in state court in Pennsylvania (the "Underlying Lawsuit.")   GULF COAST sought a defense from Defendant AMERICAN SAFETY INDEMNITY COMPANY ("ASI") under GULF COAST'S commercial

general liability ("CGL") policy, which also contains professional liability.  ASI refused to defend GULF COAST in the Underlying Lawsuit which produced this litigation.  Diversity jurisdiction is not contested.

**FACTUAL BACKGROUND**

2.      GULF COAST is an Environmental Engineering firm.  It designs, constructs, and installs pollution control devices called thermal oxidizers at its clients' sites, which thermal oxidizers are intended to destroy harmful emissions from the client's operations.

3.      About June 8, 2009 GULF COAST entered into a contract with Piramal Critical Care, Inc.'s ("Piramal's") corporate predecessor, Minrad, Inc., to provide a regenerative thermal oxidizer ("RTO") to Minrad's factory.  Piramal sued GULF COAST in the Underlying Lawsuit on May 12, 2010, and amended its Complaint on February 16, 2012.  Piramal asserts that the RTO is defectively designed and does not function properly.  Piramal also asserts that the scrubber provided by GULF COAST's subcontractor, Delta Cooling Towers, Inc., flooded and damaged the RTO.

4.      Piramal's Amended Complaint in the Underlying Lawsuit includes the following allegations, identified by their paragraph members in the Amended Complaint:

*Paragraph 33:* (Appendix page 60)
"*The Agreement required Gulf Coast to perform its services in a professional manner, with the level of care and skill ordinarily exercised in manufacturing thermal oxidizers and in conformance with the requirements of the Purchase Order.*

*Paragraph 34:* (Appendix page 61)
"*Gulf Coast failed to perform in a professional manner and failed to exercise reasonable care in the engineering, design, manufacturing, delivery, installation and commissioning for the RTO and scrubber.*"

<u>*Paragraph 55:*</u> (Appendix page 64)

*"As a result of Gulf Coast's breach of its professional duty to Piramal, Piramal sustained damages including but not limited to all money paid to Gulf Coast, additional expenses to pay to manufacture a new thermal oxidizer, all other expenses caused by Gulf Coast's failed performance, and monetary penalties incurred by Piramal from the PADEP for failing to satisfy the consent order.*

<u>*Paragraph 58:*</u> *(*Appendix page 65*)*

*"Gulf Coast purchased a scrubber from a subcontractor Delta Cooling Towers, Inc. ("Delta"). The scrubber system provided by Delta was both defectively designed and defectively manufactured. As a result of the manufacturing defects, the Delta scrubber system flooded and damaged other parts of the RTO.*

<u>*Paragraph 60:*</u> (Appendix page 65)

*"As a result of Gulf Coast's breach of its professional duty to Piramal, Piramal sustained damages including but not limited to all money paid to Gulf Cost, additional expenses to pay to manufacture a new scrubber, repair damages to the RTO caused by the defective scrubber, all other expenses caused by Gulf Coast's failed performance, and monetary penalties incurred by Piramal.*

5.      ASI issued its underlying liability policy to GULF COAST, effective March 8, 2009 through May 26, 2010.  ASI has denied coverage and refused to defend GULF COAST in the Underlying Lawsuit.

**RELIEF SOUGHT AND SUMMARY OF ARGUMENT**

6.      The contents of the complaints in the Underlying Lawsuit and of the ASI underlying liability policy are admitted.   The live Complaint in the underlying suit in Pennsylvania speaks for itself.  The purpose of this Motion for Partial Summary Judgment is to: (a) demonstrate coverage; (b) establish the duty to defend, and (c) dispose of American Safety Indemnity Company's ("ASI's") defensive allegation that can be resolved  without the necessity of additional proof.  Coverage exists as a matter of law upon each of the following grounds:

a. Because the Complaint alleges physical harm to the regenerative thermal oxidizer ("RTO") due to the defective work of a subcontractor, Delta Cooling Towers, Inc., which is covered under Coverage A;

b. Because loss of use of the RTO and Piramal's factory is property damage under Coverage A;

c. Because Coverage A covers claims based upon "Your Product" as shown in the "Your Product" Endorsement;

d. Because the underlying suit includes a professional liability claim based on negligence, which the ASI policy explicitly covers in Coverage D - Professional Liability Endorsement.

## STANDARD OF REVIEW

7. The Court is to interpret the insurance policies and allegations against Plaintiff in the underlying lawsuit as a matter of law. The standard of review of a determination of insurance coverage is de novo. *Northfield Ins. Co. v. Loving Home Care, Inc.* 363 F.3d 523, 527 (5th Cir. 2004.) The standard of review of the appropriateness of declaratory relief is abuse of discretion. *Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 390-91 (5th Cir.2003).

## APPLICABLE LAW

8. As this declaratory action is in federal court under diversity jurisdiction, state law governs substantive matters. *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Because Texas is the forum state in this matter, the court should apply Texas' choice of law rules, since a federal district court sitting in diversity must apply the forum state's conflict of laws principles. *Hyde v. Hoffmann-La Roche, Inc.,* 511 F.3d 506, 510, n. 28 (5th Cir. 2007) Any insurance policy payable to a "citizen or inhabitant" of Texas by an insurance

company doing business in Texas is held to be governed by Texas law regardless of where the contract was executed or to where the premiums are paid. Tex. Ins. Code § 21.42.

## BURDEN OF PROOF AND CONTRACT INTERPRETATION

9.      In general, the insured bears the initial burden of establishing that coverage is potentially provided by the applicable insurance policy, while it is the insurer's burden to prove the applicability of an exclusion permitting it to deny coverage. *Trinity Universal Ins. Co. v. Empl'rs Mut. Cas. Co.,* 592 F.3d 687, 691-92 (5th Cir. 2010) (applying Texas law); *Venture Encoding Serv., Inc. v. Atl. Mut. Cas. Co.,* 107 S.W.3d 729, 733 (Tex. App.-Fort Worth 2003, pet. denied); Tex. Ins. Code Ann. § 554.002. If the insurer is successful in showing an exclusion, the burden shifts back to the insured to prove that an exception to the exclusion applies. *Guar. Nat'l Ins. Co. v. Vic Mfg. Co.,* 143 F.3d 192, 193 (5th Cir. 1998) (applying Texas law.)

10.      Under Texas law, insurance policies are subject to the rules of contract interpretation. *Progressive County Mut. Ins. Co. v. Sink,* 107 S.W.3d 547, 551 (Tex. 2003). In construing the terms of a contract, the court's primary purpose is always to ascertain the true intent of the parties as expressed in the written instrument. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus.,* 907 S.W.2d 517, 520 (Tex. 1995). To this end, the court reads all provisions within the contract as a whole and gives effect to each term so that no part of the agreement is left without meaning. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 652 (Tex. 1999); see also *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 216 (Tex. 2003). "Terms in contracts are given their plain, ordinary, and generally accepted meaning unless the contract itself shows that particular definitions are used to replace that meaning." *Bituminous Cas. Corp. v. Maxey,* 110 S.W.3d 203, 208-09 (Tex. App. - Houston [1[st] Dist.] 2003, pet. denied).

11.      When a contract as worded can be given "a definite or certain legal meaning," then it is unambiguous as a matter of law, and the court enforces it as written. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus,* 907 S.W.2d at 520; see also *Fiess v. State Farm Lloyds,* 202 S.W.3d 744,

746 (Tex. 2006). The court will not find a contract ambiguous merely because the parties advance conflicting interpretations. *Fiess,* 202 S.W.3d at 746. If, however, the court finds the exclusion to be ambiguous, the court must construe it in favor of the insured as long as that construction is not unreasonable. *Id.* The court must adopt the interpretation of the exclusion that is offered by the insured, if it is not unreasonable, even if the interpretation offered by the insurer is more reasonable. *Trinity Universal Ins. Co.v. Empl'rs Mut Cas. Co.,* 592 F.3d at 692 (quoting *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.,* 141 S.W.3d 198, 202 (Tex. 2004)); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.,* 811 S.W.2d 552, 555 (Tex. 1991)). Further, it has been held that an exclusion that takes away coverage reasonably expected by an insured must be conspicuous and clear. *Haynes v. Farmers Ins. Exchange,* 89 P 3d 381, 385 (Cal. 2004). The policy of construction in the favor of the insured is the strongest in considering exceptions and limitations. *Ramsay v. Maryland American General Ins. Co.,*533 S.W.2d 344, 349 (Tex. 1976). Endorsements control over conflicting language in the body of the policy. *TIG Ins. Co. v. North American Van Lines,* 170 S.W.3d 264, 271 (Tex. App.– Dallas 2005).

## THE "CONTRACT" ISSUE

12.    The defendants base their defenses largely upon the fact that most of the legal theories asserted by Piramal Critical Care, Inc. ("Piramal"), the Plaintiff in the Pennsylvania lawsuit allege breach of contract, rather than tort. However, the Pennsylvania lawsuit is in fact a negligence suit, as evidenced by the underlying factual allegations. Texas law clearly establishes that the Pennsylvania Plaintiff's characterization of its claims is not relevant, as coverage issues are controlled by the underlying factual allegations. This entire argument and defense by defendants may be moot since the filing of an Amended Complaint by Piramal in Pennsylvania which expressly alleges professional negligence. Further, the damages claimed by the Pennsylvania Plaintiff clearly include tort damages. For example, the claim for penalties payable to the Pennsylvania Department of Environmental Protection ("PADEP") are "tort" damages,

which extend beyond the mere subject of the contract. Further, whether Piramal's remedy is in contract or tort is not controlling, as the proper inquiry is whether an "occurrence" has caused "property damage." *Lamar Homes, Inc. v. Mid-Continent Casualty Company*, 242 S.W.3d 1, 13 (Tex. 2007), Appendix 297.

### THE PENNSYLVANIA LAWSUIT IS COVERED BY COVERAGE A OF THE ASI POLICY

13.     ASI declined coverage by letter dated July 6, 2010 which is Appendix 114. The gist of the letter is a paragraph on page 2 which states: "*Please be advised ASIC declines GCES' tender of the defense of this matter, as there is not coverage under the policy for breach of contract, breach of warranty, or unjust enrichment as outlined herein. ASIC will not hire defense counsel and GCES should take the appropriate steps to protect its interests in this matter by hiring counsel.*" The defendants base their defenses largely upon the fact that the legal theories asserted in the Pennsylvania Original Complaint allege breach of contract, rather than tort. However, the Pennsylvania lawsuit is in fact a negligence suit, as evidenced by the underlying factual allegations, the amended complaint in such lawsuit and the claim for penalties payable to the Pennsylvania Department of Environmental Protection ("PADEP").

14.     The operative part of Coverage A is contained in the following language from page 4 of the ASI Policy (Appendix 129):

    a.     "*We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.*"

    b.     "*This insurance applies to "bodily injury" and "property damage" only if:*

        1.     *The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";*

2. *The "bodily injury" or "property damage" occurs during the policy period; and..."*

15.     The Pennsylvania Amended Complaint alleges in paragraphs 22, 35, 55 and 60 (Appendix 59, 61, 64, and 65) that the defective RTO and defective Scrubber made by the Subcontractor will cause consequential or special damages.  Accordingly, the suit is not merely for damages to the "product" or "work", but alleges business interest damages as a result of the allegedly defective product.  Such allegations show that this is a tort rather than a contract claim.  Here, the claims of liability by having to pay penalties under the consent decree with the Pennsylvania Department of Environmental Protection ("PADEP") are such "business interests."

16.     The ASI policy contains both Coverage A, which is Commercial General Liability ("CGL"), and Coverage D, Professional Liability.    Commercial General Liability is "Occurrence" coverage and Professional Liability under part D is "Claims Made" coverage.  The Pennsylvania Plaintiff's Amended Complaint alleges, among other things, in Paragraph 58 (Appendix 65) that the Scrubber system was defectively designed and manufactured by Gulf Coast's subcontractor, Delta Cooling Towers, Inc., and that it damaged the Regenerative Thermal Oxidizer ("RTO") supplied by GULF COAST.  Because Gulf Coast is being sued for damages caused by a subcontractor, its Commercial General Liability coverage applies.  The Pennsylvania Plaintiff's suit is for damage to and loss of use of the RTO, which constitutes "Property Damage" under Coverage A as defined on pages 17 - 18 of ASI Policy (Appendix pages 131 and 132), which is defined in relevant part as follows:

> *"Property damage" means:*
>
> a.      *Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or*

> b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

### i.  The alleged defects constitute an "accident" or "occurrence"

17.  The ASI policy defines an "occurrence" as an "accident" Appendix 131. Texas law provides that where a general contractor (Gulf Coast) is sued for damages caused by defective work or negligence of a subcontractor (Delta Cooling Towers), the defects constitute an "accident" or "occurrence" under a Commercial General Liability ("CGL") policy, sufficient to trigger the duty to defend by the liability insurer. In *Lamar Homes, Inc. v. Mid-Continent Casualty Company*, 242 S.W.3d 1 (Tex. 2007), the Fifth Circuit certified the following questions to the Texas Supreme Court:

> 1.  When a homebuyer sues his general contractor for construction defects and alleges only damage to or loss of use of the home itself, do such allegations allege an "accident" or "occurrence" sufficient to trigger the duty to defend or indemnify under a CGL policy?
>
> 2.  When a homebuyer sues his general contractor for construction defects and alleges only damage to or loss of use of the home itself, do such allegations allege "property damage" sufficient to trigger the duty to defend or indemnify under CGL policy?
>
> 3.  If the answers to certified questions 1 and 2 are answered in the affirmative, does Article 21.55 of the Texas Insurance Code apply to a CGL insurer's breach of the duty to defend?

18.  The Texas Supreme Court answered affirmatively as to the duty to defend with respect to the first two questions, and answered the third question in the affirmative. (Tex. Ins. Code § 21.55 has been re-codified as Tex. Ins. Code § 542.060.) The issue of the duty to defend insured contractors in underlying litigation involving damage to the property constructed by the contractor has produced extensive litigation, and the *Lamar Homes* case addresses many of the

same arguments as raised by ASI in this suit.  In its Brief filed in the Supreme Court of Texas (Appendix 261), the insurer, Mid-Continent Casualty Company, contended:

    a.  There is no occurrence because there is no accident; (Appendix 269)

    b.  Because the injuries ordinarily follow from and could be reasonably anticipated from the insured's conduct, there is no accident;  (Appendix 272)

    c.  The damages from the insured's failure to perform its contractual undertaking are neither unexpected or unforeseeable to the insured; (Appendix 272)

    d.  There is no property damage, only economic loss; (Appendix 275)

    e.  The underlying claim is a contract claim because the injury is only the economic loss to the subject of the contract;  (Appendix 276)

    f.  Economic losses are not property damage under a general liability policy. (Appendix 276)

19.    Each of the above propositions was addressed in *Lamar Homes*.  The brief of the insured, Lamar Homes, Inc., filed with the Supreme Court of Texas (Appendix 236) addressed each of such contentions persuasively, and the Texas Supreme Court held for Lamar Homes, Inc. ASI's contentions of "no occurrence" and "no accident" and "economic loss only" were all explicitly rejected in *Lamar Homes,* which held that an accident is a fortuitous, unexpected and unintended event.  *242 S.W. 3d* at 8, Appendix 294.  The fact that numerous (23) amicus briefs were filed in *Lamar Homes* illustrates both the significance of the issues and the adequacy of the analysis.  Because the *Lamar Homes* case is referred to repeatedly, it is included in GULF COAST's Appendix at 285-312.

### ii.    The Business Risk Analysis

20.    The essence of ASI's denial of coverage is based on the notion that the insuring agreement of a CGL policy, which is comprised of the "property damage" and "occurrence"

requirements, does not apply to defective design or workmanship claims when the damage is to the work itself. ASI's position not only ignores significant precedent from Texas courts and federal courts applying Texas law, but also fails to recognize the scope of coverage afforded under a modern CGL policy. CGL policies, like ASI's, are created with a modular structure under which coverage is broadly created for "property damage" caused by an "occurrence." The policy then restricts the scope of coverage by shifting various specific risks back to the insured by way of specific exclusions. The exclusions, in turn, have certain exceptions that preserve coverage for identified risks. One of those risks, is when the "damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." The evolution of these policy exclusions and the exceptions to the exclusions demonstrates that insurers have broadened the scope of coverage provided to contractors for completed operations, and, in particular, that CGL insurers intend to provide coverage to contractors when allegedly defective work performed on their behalf by subcontractors either causes damage or is damaged. Further, the very presence of the specific exclusions demonstrates the fallacy of ASI's contention that the insuring agreement (or some sort of business risk/economic loss rationale) operates to negate any and all coverage for defective design claims. There would be no reason to have specific exclusions if the damage could never be considered to have arisen from a covered "occurrence" in the first place. The existence of disagreement among Texas Courts on these issues prompted the Fifth Circuit to certify the questions to the Texas Supreme Court. 242 S.W. 3d at 5, Appendix 291. The *Lamar Homes* case holds in favor of the insured on every single issue. It holds that all that is required for coverage is an allegation of an "occurance" which causes "property damage." 242 S.W. 3d at 6, Appendix 292. Whether the underlying Plaintiff's remedy is in contract or tort is not determitive. 242 S.W. 3d at 13, 16, Appendix 298, 300. The

economic loss rule is not a useful tool for determining insurance coverage. 242 S.W. 3d at 12, Appendix 297. An "occurrence" is simply an unexpected consequence of an insured's act, even if due to negligence or faulty work. 242 W.S. 3d at 8, Appendix 293-294.

### iii. No exclusion applies as the damage (or a portion of the damage) was caused by the work performed by a Subcontractor

21.     In *Sigma Marble and Granite-Houston v. Amerisure Mutual Insurance Company*, 2010 WL 5464257 (S.D. Tex.- Houston Division); Civil Action No. H-09-3942 (Appendix 223-235), the Magistrate Judge addressed factual circumstances similar to the present case. In *Sigma Marble*, the insured was sued, much like Gulf Coast, for damages for defective work performed by a subcontractor. *Sigma Marble* was granted summary judgment against its insurer upon the duty to defend, because an "occurrence" caused "property damage." The poorly done subcontractor work was held to allege negligence, and accordingly a covered claim, citing *Lamar Homes*. The "your work" exclusion did not apply to subcontractor work. *Sigma Marble*, at page 12, Appendix 324. The Court also pointed out that insurer's reliance on prior inconsistent case law before the "authoritative" ruling in Lamar Homes is "misplaced." *Sigma Marble* at 10, Appendix 322. In the Pennsylvania lawsuit, it is alleged that the defective subcontractor work damaged the RTO, so an "occurrence" and "property damage" are alleged as a matter of law.

22.     Clearly the RTO is tangible property. The Plaintiff in the Pennsylvania lawsuit claims in Paragraph 58 of its Amended Complaint (Appendix 65) that the RTO was flooded and damaged by the defective Scrubber from a subcontractor, Delta Cooling Towers, Inc. Accordingly, an "occurrence" has occurred, producing a claim for property damage, which is covered under CGL, Coverage A, of the ASI policy. An "occurrence" is defined on page 17 of the ASI Policy (Appendix page 131) as an "accident".

23.    The Thermal Oxidizer is not excluded from coverage by the "your work" exclusion, even without considering the endorsement for thermal oxidizers.  Exclusion (l) on page 8 of the ASI policy (Appendix 130) excludes coverage for property damage to "your work," but an exception to the exclusion states:

> *"This exclusion does not apply if the damaged work or the work out of which the damage arises was **performed on your behalf by a subcontractor."  (Emphasis added.)*

24.    The policy language of the ASI policy on page 8 (Appendix 130) is virtually the same as the similar coverage in *Lamar Homes*, in that the exclusion for damage to the insured's own work does not apply if the work out of which the damage arises was performed by a subcontractor of the insured.  Accordingly, the "your work" exclusion does not apply, and ASI's duty to defend is established.

### iv.    No exclusion applies as the RTO was manufactured, sold and distributed by Gulf Coast

25.    Setting aside the Subcontractor issue, property damage arising from the RTO is covered under Coverage A by an Endorsement on page 42 (Appendix page 133) which states: *"This insurance does not apply to "claims" or "suits" "arising from" "your product".  Provided, however, that this exclusion shall not apply to the specific product(s), if any, listed below, which are manufactured, distributed or sold by you: **All Thermal Oxidizer units and associated equipment distributed by the Named Insured**." (Emphasis added.)*

26.    The essence of the Pennsylvania lawsuit is that the RTO is defectively designed, including the Scrubber done by a subcontractor of the insured.  The RTO is clearly a "product," made and distributed by GULF COAST, and must be covered to give effect to Endorsement on page 42 of the ASI Policy (Appendix page 133) which removes Oxidizers from the "your

product" exclusion. Since the Court must give meaning to each contractual provision, the Endorsement at Appendix 133 means that Oxidizers are not excluded from coverage, and to hold otherwise would render this endorsement meaningless. As stated in paragraph 4 above, no term should be held meaningless, and as stated in paragraph 5 above, endorsements trump conflicting language, so the "Thermal Oxidizer" endorsement evidences coverage.

27. The Pennsylvania Plaintiff's suit includes loss of use of the RTO. Loss of use constitutes property damage under Coverage A of the ASI Policy. Property damage includes, in addition to physical injury (as described on Appendix 131), the following from the next page: "*Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.*" (Appendix page 132)

### THE PENNSYLVANIA LAWSUIT IS ALSO A COVERED PROFESSIONAL LIABILITY CLAIM

28. Malpractice claims against professionals are ordinarily based upon negligent conduct in performing services to their clients. Although typically based upon an underlying contract to provide services, professional negligence claims are torts. *Barcello v. Elliott,* 923 S.W.2d 575, 579 (Tex. 1996). A professional must exercise the degree of care of a prudent practitioner of the profession. *Ryan v. Morgan Spear Associates, Inc.*, 546 S.W.2d 628, 680-681 (Tex. App.- Corpus Christi, 1977, writ ref., n.r.e.)

29. An engineer is liable only to those in privity of contract. *Hartman v. Urban,* 946 S.W.2d 546, 548-550 (Tex. App. - Corpus Christi, 1997, no writ.) Since privity of contract is required, an underlying contract will ordinarily exist. Malpractice claims against professionals are covered by the two-year statute of limitations applicable to tort cases rather then the four-year statute applicable to breach of contract cases. *KPMG, v. Harrison County Housing Finance Corp.* 988 S.W.2d 746, 750 (Tex. 1999).

30. Texas law does not allow legal malpractice claims to be brought as breach of contract cases. Smith v. Heard, 980 S.W.2d 693, 697 (Tex. App. - San Antonio 1998, pet. denied). Texas does not recognize a cause of action for breach of implied warranty of professional services. *Murphy v. Campbell*, 964 S.W.2d 265, 268 (Tex. 1997). The plaintiff's legal theory can not change the character of malpractice when the crux of the complaint is the adequacy of the legal representation. Kimleco Petroleum v. Morrison & Shelton, 91 S.W.3d 921, 924 (Tex. App. - Fort Worth 2002, pet. denied.)

31. The "practice of engineering" as defined in the Texas Occupational Code § 1001.003 (b) closely tracks the allegations of the Pennsylvania lawsuit. The statutory definition of engineering as defined in the Texas Occupational Code includes:

> "design, conceptual design, or conceptual design coordination of engineering works or systems."

32. True breach of contract claims against professionals can exist where the professional has overcharged the client or has not performed the services. The Pennsylvania Plaintiff in its amended complaint alleges in Counts I and II that Gulf Coast failed to commission the thermal oxidizer, Count III alleges tort claims but calls them contract claims, and Counts V and VI explicitly allege tort claims (Appendix pages 59-65). The claim for failure to commission the RTO may be a true breach of contract claim and not subject to a duty of payment by Defendants, but this does not negate the fact that key parts of the Pennsylvania Plaintiff's claim are for professional negligence. The same principles of professional negligence apply to anyone who, in the course of providing professional services, fails to exercise the degree of care required of an ordinarily prudent member of the profession. *Hager v. Romines,* 913 S.W.2d 733, 734 (Tex. App. - Fort Worth 1995, no writ.)

33.     For the reasons stated, the original complaint in the Pennsylvania lawsuit constitutes a "professional liability claim" as a matter of law.  The amended Pennsylvania Complaint, at Appendix 64, expressly asserts professional liability in Count V entitled "Professional Negligence - RTO Design and Manufacturing", which alleges professional negligence in paragraphs 53-55.  Also, Count VI entitled "Professional Negligence - Scrubber Design and Manufacturing", alleges professional negligence in paragraphs 57-60 (Appendix pages 64-65).  The ASI Policy includes professional liability coverage in Endorsement Coverage D (Appendix 134-140).  The Coverage D Professional Liability Endorsement expressly covers "*negligent acts, errors or omissions of the insured in the performance of covered professional activities in the coverage territory*" (Appendix 134).  "*Covered professional activities*" are defined on Appendix 138 to be: "*Those environmental professional services performed for a fee directly by you or on your behalf for others including engineering, consulting, project management, construction management activities, and the professional services set forth in the application.*"  This language creates a prima facie showing of coverage as a matter of law, under Coverage D - Professional Liability coverage, of the ASI Policy.

### THE COMPLAINT DOES NOT ALLEGE AN INTENTIONAL TORT

34.     The ASI Policy admittedly only insures against negligence and not intentional torts; however, the Pennsylvania Complaint (both original and amended) alleges negligence. Negligence is well recognized as a failure to exercise ordinary care.  Paragraphs 33, 34, 55, and 60 of the Pennsylvania Amended Complaint read as follows:

*Paragraph 33:* (Appendix page 60)

*"The Agreement required Gulf Coast to perform its services in a professional manner, with the level of care and skill ordinarily exercised in manufacturing thermal oxidizers and in conformance with the requirements of the Purchase Order.*

      <u>Paragraph 34</u>: (Appendix page 61)

*"Gulf Coast failed to perform in a professional manner and failed to exercise reasonable care in the engineering, design, manufacturing, delivery, installation and commissioning for the RTO and scrubber."*

      <u>Paragraph 55</u>: (Appendix page 64)

*"As a result of Gulf Coast's breach of its professional duty to Piramal, Piramal sustained damages including but not limited to all money paid to Gulf Coast, additional expenses to pay to manufacture a new thermal oxidizer, all other expenses caused by Gulf Coast's failed performance, and monetary penalties incurred by Piramal from the PADEP for failing to satisfy the consent order.*

      <u>Paragraph 60</u>: (Appendix page 65)

*"As a result of Gulf Coast's breach of its professional duty to Piramal, Piramal sustained damages including but not limited to all money paid to Gulf Cost, additional expenses to pay to manufacture a new scrubber, repair damages to the RTO caused by the defective scrubber, all other expenses caused by Gulf Coast's failed performance, and monetary penalties incurred by Piramal.*

      35.    The above allegations establish that the Pennsylvania lawsuit alleges negligence, since the allegation is lack of reasonable care and not an intentional tort, as a matter of law. An *"Occurrence"* is defined on page 17 of the ASI Policy (Appendix 131) as an *"accident,"* and the

Pennsylvania Plaintiff alleges negligence, not intentional wrongdoing, which means the alleged design flaws would be an "*accident*."

36.     An "accident" means a "fortuitous, unexpected and unintended event," that is not an intentional tort, and an act performed negligently is an accident if the effect is not the intended or expected result. *Lamar Homes, Inc. v. Mid-Continent Casualty Co.,* 242 S.W.3d 1, 8 (Tex. 2007). The underlying suit in *Lamar Homes* alleged that *Lamar* failed to properly design the foundation and failed to use appropriate skill and care, and was guilty of negligence. As there was no contention that *Lamar* intended or expected the damage, an "Occurrence" was alleged and coverage invoked. *Ibid*, at 9.

## GULF COAST PROMPTLY GAVE NOTICE TO ASI OF THE PENNSYLVANIA LAWSUIT SERVED UPON IT

37.     The Pennsylvania citation was served on June 24, 2010. The claim notice was sent to ASI's agent the same day and forwarded to ASI the following day (Appendix 143-144), and Declaration of Kenneth L. Rogers (Appendix 222). Gulf Coast submits that this is prompt notice as a matter of law.

38.     The CGL Coverage A - Bodily Injury and Property Damage Liability, of the ASI Policy is "Occurrence" coverage. The suit was filed in Pennsylvania on May 12, 2010, so the "Occurrence" clearly occurred during the policy period ending May 26, 2010. The original policy termination date of March 8, 2010 was extended to May 26, 2010 (Appendix 141). The Coverage D Professional Liability coverage of the ASI Policy is "Claims Made" coverage. The ASI Coverage D - Professional Liability coverage terminated on May 26, 2010, but is subject to a 30 day automatic extended reporting period at Appendix 139, which provides:

*"Automatic Extended Reporting Period. Upon termination of this policy for any reason other than non-payment of premium or non-compliance with the terms and conditions of this policy, a "claim" first made against the insured and reported to us, in writing, within 30 days of the end of the policy period will be deemed to have been made on the last day of the policy period, provided that the "claim" is for "covered damages" because of a negligent act, error or omission in the performance "covered professional activities" in the "coverage territory" provided:*

*(1)    The negligent act, error or omission is committed subsequent to the Retroactive Date as set forth in this Endorsement and before the end of the policy period; and*

*(2)    The "covered damages" arise out of the performance of "covered professional activities" subsequent to the Retroactive Date as set forth in this Endorsement and before the end of the policy period.*

*All coverage shall be subject to all of the policy terms, conditions and exclusions. The Automatic Extended Reporting Period shall only apply if no other similar insurance is in force at the time of the Automatic Extended Reporting Period. The Automatic Extended Reporting Period shall not in any way reinstate or increase the Limits of Insurance or extend the policy period."*

39.    The obvious purpose of the extended reporting period for the "claims made" coverage is to permit the coverage of a claim which arises near the end of the policy period but is not reported until after the policy period, while avoiding duplicative coverage in instances where the insured has coverage from another insurer when the claim is first reported. In this case, Endurance contends there is no coverage under the ENDURANCE Policy because the claim predated its policy inception and was not disclosed by GULF COAST in the ENDURANCE application. If the ENDURANCE Policy provides coverage, the ASI extended reporting period

would not apply, and ASI would have no coverage under the "Claims Made" coverage. The declaratory judgment GULF COAST seeks against ASI under the professional liability coverage is contingent upon the absence of professional liability coverage by Endurance. (GULF COAST seeks to establish coverage by either ASI or Endurance, but not both.) The term "*if no other similar insurance is in force at the time of the Automatic Extended Reporting Period*" is not defined in the policy and counsel knows of no case law interpreting such term. A reasonable interpretation would be that the "*similar insurance*" would be "*in force*" if it would apply to the claim in question with essentially comparable coverage as provided by ASI.

40.     Because Endurance denies coverage, GULF COAST asserts that the Endurance coverage is not "*in force*" as to the claim in question if it would not be covered by Endurance. This interpretation is reasonable in that it means one insurer, but not both, would cover a claim. To allow each insurer to assert that the claim was "not on their watch" would defeat the purpose of insurance which is to provide continuous coverage, and would be unreasonable. As previously discussed above in paragraphs 4 and 5 of this Brief, this Court should adopt Gulf Coast's interpretation. Gulf Coast's interpretation is also reasonable because insured parties reasonably expect to be covered by either the older or newer policy, bot not both.

41.     ASI concedes the claim was reported within the 30 day extended reporting period, if it is applicable. To exclude GULF COAST's claim because of the presence of "other insurance" requires a literal, and not functional, analysis as the Courts have required. The ASI Extended Reporting Period applies unless GULF COAST has other insurance which is "similar." With respect to "similarity" between the ASI policy and the ENDURANCE policy, the difference in coverage dates is the most obvious dissimilarity. However, another dissimilarity is the extended reporting period. The ENDURANCE extended reporting period on page 43 of the

ENDURANCE policy (Exhibit C to GULF COAST's Original Complaint, copy attached as Appendix 326) provides that the insured has 60 days after the end of the policy period to report claims, and such is without regard to other insurance. Therefore if ASI's extended reporting period language were "similar" to ENDURANCE's, ASI's issue of late reporting would not even be subject to discussion.

42. Another reason to construe the language of the ASI Extended Reporting Period against ASI is that it would act as a windfall to ASI and a forfeiture to GULF COAST if the ENDURANCE policy were held to exclude the claim but simultaneously deprive GULF COAST of the benefit of the ASI Extended Reporting Period. Recent court decisions have analyzed the issue of prejudice to avoid forfeitures and potential loss of coverage based on policy language that is not necessary to implement the bargained-for coverage. In *PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630, 636-37 (Tex. 2008) the Texas Supreme Court held that with an "occurrence" policy, the insured's lack of timely notice did not defeat coverage, absent prejudice. In *Prodigy Communications Corp. v. Agricultural Excess & Surplus Ins. Co.*, 288 S.W.2d 374, 375 (Tex. 2009) the Texas Supreme Court extended such analysis to a claims made policy which required reporting "as soon as practicable." In both *PAJ* and *Prodigy*, the Court declined to enforce the literal language of the policies to defeat coverage. A close analogy to the present case was presented in *Underwriters at Lloyds Sydicate 242 v. Turtle Creek Partnership, Ltd.*, 716 F. Supp. 633 (S.D. Tex.- Houston 2010), in which the policy excluded windstorm damage if the insured property was in a special flood hazard area and was not covered under the National Flood Insurance Program. The property was in a special flood hazard area, did not have the federal flood insurance, and the insurer sought to exclude the windstorm claim based on the lack of federal flood insurance. This Court held that if the property was simultaneously damaged by

flood and windstorm, the insurer would lose the benefit of its attempted allocation with the federal flood insurer, but if the damage was only from windstorm, the insurer would not be prejudiced by the absence of federal flood insurance, and coverage would exist. The analogy is that if ENDURANCE's policy covers the loss, ASI has a legitimate interest in not having to allocate overlapping coverage, but if for some reason ENDURANCE's policy does not cover the loss, ASI is not prejudiced by the existence of the ENDURANCE policy, just like Underwriters at Lloyds Syndicate 242 was not prejudiced by a lack of federal flood insurance if there was no flood damage. The presence or absence of the other insurance is immaterial where it would not cover the loss.

43.     GULF COAST's interpretation is also consistent with the ASI policy language which addresses claims arising near the beginning, rather than the end, of the policy period. On page 60 of the ASI policy (GULF COAST Appendix 136), exclusion "n" entitled "Prior Policies" excludes "Any "covered damages" based upon or arising out of any act, error or omission in the performance of "covered professional activities" for which any insured has any prior policy or policies which provide insurance for its liability arising out of such act, error or omission, whether or not the available limits of liability of such prior policy or policies are sufficient to pay any liability or "claim". The "Prior Policies" reasonably excludes claims covered by prior policies, but only if they "provide insurance" for the claim in question. The same logic should apply to the later (Endurance) policy. The seriousness of a threatened claim is not always apparent to the insured (as is self-evident here), and GULF COAST's interpretation is certainly reasonable. Endurance's coverage cannot be similar to ASI's if it cannot provide equivalent coverage on the claim in question. Texas law has long discouraged forfeitures in insurance policies, and to accept ASI's contention that the existence of the ENDURANCE

policy, without actually covering the claim, voids ASI's professional liability coverage under the Extended Reporting Period, would constitute a forfeiture.

44.     Further, because GULF COAST did report the claim within the 30 day extended reporting period, the stated policy justification of the insurer's interest in prompt estimation of losses does not cut in ASI's favor.  Since ASI received notice within the 30 day window, holding in favor of GULF COAST does not extend the policy beyond its contracted termination date.

45.     After *PAJ* and *Prodigy*, the Fifth Circuit decided *East Texas Medical Center v. Lexington Ins. Co.*, 575 S.W.3d 520 (5th Cir. 2009) which also involved notice and prejudice. East Texas Medical Center ("ETMC") had a medical malpractice excess policy with Lexington with a $2 Million self-insured retention, which policy expired on June 8, 2003.  Under the excess policy, if ETMC wanted coverage, it was required to give written notice of medical incidents, claims, and lawsuits.  In March 2003 ETMC received a "4590i letter" under Texas Civil Practice and Remedies Code § 74.051 asserting a malpractice claim, and the "Cornelius" suit was filed against ETMC on May 27, 2003.  ETMC originally valued the claim at $25,000, not substantial enough to exceed the self-insured retention, but after depositions taken in December 2003, six months after the policy expired, it revalued the case at $10 Million, and ETMC gave Lexington notice of the lawsuit in January 2004, seven months after the policy expired.  Lexington denied the claim based on ETMC's noncompliance with the policy's notice provisions.  ETMC contended its having listed the Cornelius 4590i letter in three separate "loss runs," computer generated spreadsheets of multiple patients' claims, which ETMC gave Lexington regarding the self-insured matters it was handling itself.  After a trial in which the jury found for ETMC, the district court entered judgment as a matter of law in favor of Lexington.  On appeal, the Fifth Circuit agreed ETMC violated the requirement of written notice of the suit as soon as

practicable, and noted that the district court refused to submit ETMC's requested instruction on prejudice, on the basis that Texas law at the time of the trial did not require prejudice in claims-made policies as it does with occurrence policies. The Lexington policy had a 60 day optional reporting period, but such was not deemed essential to the result. The Lexington policy required separate notices for claims and lawsuits, and it was undisputed that the Cornelius suit, although filed 12 days before the policy expired, was not reported to Lexington until seven months later. The Fifth Circuit reversed the district court and held that although the "loss runs" contained "relatively scant information" they were adequate written notice of the claim, as found by the jury. The retrial would be limited to the question of whether the breach by ETMC of the second required notice, the filing of the lawsuit, prejudiced Lexington. Although the facts are so unusual and convoluted that it is difficult to state the doctrinal basis of the opinion, the case illustrates the effort the Circuit Court will go to avoid a forfeiture of coverage based on a non-prejudicial breach by the insured. After remand, the District Court granted summary judgment in favor of the insured on the issue of prejudice. *East Texas Medical Center v. Lexington Ins. Co.*, 2011 U.S. Dist. LEXIS 18918. The District Court's opinion attached as Appendix 327 contains a very good summary of the evolving prejudice standard and the rigorous proof required to show prejudice, beginning at page 4, Appendix 330.

46.     Finally, there is another reason ASI should not be allowed to avoid liability under the Professional Liability coverage due to the date GULF COAST notified ASI of the claim. Although professional liability insurance is more typically sold as a separate policy, in this instance the professional liability coverage is contained in an endorsement within GULF COAST's general liability policy from ASI. GULF COAST submits that for such reason, GULF COAST should be entitled to the protections afforded under Texas law to insureds under general

liability insurance, as this is a "general liability policy." Texas Department of Insurance Order 23080 effective May 1, 1973 prescribes a mandatory endorsement for general liability policies, stating that late notice is not a defense unless there is prejudice. Copy attached as Appendix 336-337. Because ASI has chosen to include the professional liability coverage inside a general liability policy, it should be bound by such rule. If ASI's non-admitted status makes this rule inapplicable to it, the rule still reflects the public policy of Texas. Similarly, the Texas Department of Insurance (TDI) has policy pronouncements regarding insurance policies which are on its current website. Because ASI is not an admitted carrier in Texas, the TDI does not have to pre-approve its policy forms, so the opinion of TDI is not binding on ASI. However, the TDI guidance does give support to the notion that fairness requires important disclosures on the Declarations page (which says it is an "occurrence" policy) and not on page 58, which says "claims made." Appendix 338 is a copy of the Texas Department of Insurance Checklist for GCL policies, which states on the second page (Appendix 339) that for claims made policies, a prominent disclosure to that it is a claims made policy must appear on the declaration sheet or first page of the policy, in bold type. GULF COAST's version of the ASI declarations page, is page 1 of the ASI Policy, (GULF COAST App. 126). This is a duplicate of page 1 of Exhibit A to GULF COAST's Original Complaint. It clearly does not state that it is a claims made policy, and calls it an "occurrence" policy. ASI's pagination is different, and ASI's App. 3 is not really the first page or declaration page. ASI App. 25 is what GULF COAST believes to be the declarations page, which says it is an occurrence policy, not a claims made policy. The only references to "claims made" in the ASI policy are in the environmental impairment coverage on page 44 and the professional liability endorsement, beginning at page 58 (ASI App. 11) which is clearly neither the declarations page or the first page of the ASI primary policy.

## DUTY TO DEFEND ARISES IF ANY COVERED CLAIM ALLEGED

47.     In Texas, an insurer's duty to defend is a separate and distinct duty from its duty to indemnify. *Trinity Universal Ins. Co.,* 592 F.3d at 691. Under the "eight-cornrs" rule, an insurer's duty to defend its insured arises if the complaint in the suit against the insured alleges facts that potentially support claims for which there is coverage. *Lincoln Gen. Ins. Co. v. Reyna,* 401 F.3d 347, 350 (5th Cir.2005) (applying Texas law); see also *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.,* 279 S.W.3d 650, 654 (Tex. 2009). In determining whether this duty exists, the court's task is to compare the four corners of the pleading with the four corners of the insurance policy. *Reyna,* 401 F.3d at 350; see also *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex. 1997).

48.     Only the facts alleged, not the legal theories asserted, are relevant. *Reyna,* 401 F.3d at 350. The court interprets the allegations liberally and resolves all doubts regarding the duty to defend in favor of the insured. *Trinity Universal Ins. Co.,* 592 F.3d at 691; *Merchs. Fast Motor Lines, Inc.* 939 S.W.2d at 141. However, the court may not "read facts into the pleadings, look outside the pleadings, or imagine factual scenarios which might trigger coverage." *Pine Oak Builders, Inc.* 279 S.W.3d at 655 (quoting *Merchs, Fast Motor Lines, Inc.,* 939 S.W. 2d at 142).

49.     An insurer is required to defend its insured against suit as long as the allegations potentially give rise to at least one claim covered by the insurance policy, regardless of the number of claims potentially not covered. *Utica Nat'l Ins. Co. of Tex.,* 141 S.W.3d at 201 ("A liability insurer is obligated to defend a suit if the facts alleged in the pleadings would give rise to any claim within the coverage of the policy.") Even when "the complaint does not state facts sufficient to  clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the

coverage of the policy." *Trinity Universal Ins. Co.,* 592 F.3d at 691 (quoting *Zurich Am. Ins. Co. v. Nokia, Inc.,* 268 S.W.3d 487, 490-91 (Tex. 2008).

50.     Looking at the "four corners" of the Pennsylvania Complaint (original and amended), it is clear that some covered claims are asserted. The Pennsylvania Plaintiff chooses to couch some of its claims as breach of contract, but the factual basis is clearly substandard design work, which constitutes professional negligence, and damage from a defective Scrubber made by a subcontractor. The underlying allegations are contained in paragraphs 17, 33, 34, 55, and 60 of the Pennsylvania Amended Complaint (Appendix 58, 60, 61, 64, and 65), and the language is quoted above in paragraphs 23 and 24 of this Brief. The coverage language is quoted in paragraphs 7 and 23 of this Brief.

51.     To the extent that doubt remains as to whether the Pennsylvania Amended Complaint contains covered claims, Texas law requires that any doubt be resolved in favor of the insured; and the insurer must defend as long as the allegations *potentially* give rise to a covered claim. *Guide One Elite Ins. Co. v. Fielder Rd. Baptist Church v.,* 197 S.W.3d 310 (Tex. 2006).

52.     The duty to defend is not negated by the inclusion of uncovered claims, so the Court's focus at this stage is properly on the above described covered claims.

## ASI's Invalid Affirmative Defense

53.     Plaintiff seeks to streamline this litigation by disposing of one affirmative defense alleged by ASI which is clearly without merit. Only ASI's second affirmative defense is really an affirmative defense. The others are merely a denial of coverage under the written documents.

54.     ASI's second affirmative defense contends Plaintiff did not comply with the policy's conditions precedent. Rule 9 of the Federal Rules of Civil Procedure requires a defendant to deny the specific condition precedent allegedly not performed, which ASI has not

done. A denial of a condition precedent is not an affirmative defense. *Mellon Bank v. Aetna Bus. Credit, Inc.,* 619 F.2d 1001, 1008 n.6 (3ʳᵈ Cir. 1980.) Because ASI has not denied any condition precedent with particularity, Plaintiff has met its burden of showing compliance with conditions precedent. *Myers v. Central Fla. Invs.,* 592 F.3d 1201, 1224 (11ᵗʰ Cir. 2010).

## ATTORNEY'S FEES

55.     Attorney's fees are discretionary under the Declaratory Judgment statute, but are mandatory under Texas Civil Practice and Remedies Code § 38.001 and Texas Insurance Code Section 542.060 (the current codification of prior Section 21.55.) Therefore, an award of attorney's fee to Plaintiff is appropriate. Invoices and an affidavit as to reasonableness and necessity of the fees are at Appendix 145-221, and Appendix 343-352.

## SUMMARY JUDGMENT STANDARD

56.     Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c)); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Brown v. City of Houston, Tex.,* 337 F.3d 539, 540-41 (5ᵗʰ Cir.2003) If the moving party meets its burden, the non-moving party must demonstrate that genuine issues of material fact do exist to be resolved at trial. *Celotex Corp.* 477 U.S. at 324.

## CONCLUSION

57.     GULF COAST asks the Court to grant it summary judgment finding coverage under ASI's primary policy, finding a duty to defend, and awarding GULF COAST its costs and attorney's fees in both the Pennsylvania suit, with interest, and this suit.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Gulf Coast Environmental Systems, LLC now moves the Court to consider this Brief in Support of Plaintiff's Motion for Partial Summary Judgment, and prays that said partial summary judgment be granted in favor of Plaintiff against Defendant ASI finding a duty to defend Gulf Coast in the underlying Pennsylvania lawsuit, and making the following declarations:

1.    That the Pennsylvania lawsuit alleges harm to the RTO and other damages caused by the defective work of a subcontractor, giving rise to coverage under part A of the policy;

2.    That the Pennsylvania lawsuit alleges professional negligence, giving rise to coverage under the Professional Liability Coverage Part D of the ASI policy;

3.    If a design or engineering error was committed, it would be an accident and negligence;

4.    That the defense of lack of prompt notice to ASI is without merit;

5.    That the "affirmative defense" of lack of conditions precedent is without merit;

6.    Declaratory relief that Plaintiff is entitled to recover its defense costs in the Pennsylvania suit, net of the deductible, and recovery of such costs incurred, with 18% per year interest;

7.    For reasonable attorneys' fees as hereinabove alleged for the prosecution of this suit;

8.    All costs of court; and

9.    For such other and further relief, both general and special, at law and in equity, to which Plaintiff may be justly entitled.


Respectfully submitted,

JONES, ALLEN & FUQUAY, L.L.P.
8828 Greenville Avenue
Dallas, Texas  75243
(214) 343-7400 (Telephone)
(214) 343-7455 (Facsimile)

By:     /s/ Charles S. Fuquay
        Charles S. Fuquay (Attorney in Charge)
        State Bar No. 0755240
        Federal ID No. 37786
        Attorneys for Plaintiff,
        Gulf Coast Environmental Systems, LLC

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served upon the following via the electronic filing system, on this 8th day of May, 2012:


Eric J. Cassidy
SQUIRE SANDERS & DEMPSEY (US) LLP
6200 Chase Tower
Houston, Texas 77002
Facsimile: (713) 546-5830

Lauren N. Pierce
COOPER & SCULLY, P.C.
Founders Square
900 Jackson Street
Suite 100
Dallas, Texas 75202
Facsimile: (214) 712-9540                    /s/ Charles S. Fuquay
                                             Charles S. Fuquay