# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **GULF COAST ENVIRONMENTAL SYSTEMS, LLC,** | § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **CIVIL ACTION NO.** **4:11-cv-02753** |
| **AMERICAN SAFETY INDEMNITY COMPANY and ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY,** | § § § § § | |
| **Defendants.** | § | |

---

## AMERICAN SAFETY INDEMNITY COMPANY'S AMENDED MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

---

Respectfully submitted,

LAUREN N. PIERCE
Attorney in Charge
State Bar No. 00784675
Southern District Bar No. 18307
COOPER & SCULLY, P.C.
900 Jackson, Suite 100
Dallas, Texas 75202
Telephone: 214.712.9500
Facsimile: 214.712.9540

**ATTORNEYS FOR DEFENDANT AMERICAN SAFETY INDEMNITY INSURANCE COMPANY**

# TABLE OF CONTENTS

Nature and stage of proceeding....................................................................................................1

Issues and standard of review ....................................................................................................2

Summary of the argument...........................................................................................................3

Facts ...........................................................................................................................................4

I.       The Insurance Policies ...................................................................................................4

II.      The Underlying Suit........................................................................................................4

III.     The Coverage Lawsuit ....................................................................................................7

Argument and authority duty to defend .....................................................................................7

I.       Determination of Duty to Defend under Texas Law ......................................................7

II.      No Duty to Defend Under Coverage A – Bodily Injury and Property Damage
         Liability...........................................................................................................................8

         A.       Exclusion b: Contractual Liability Exclusion .......................................................9

                  1.       Construction of contractual liability exclusion by Texas Supreme
                           Court in Gilbert Tex. Constr. V. Underwriters at Lloyd's London ...........10

                  2.       Application of Gilbert to duty to defend case............................................11

                  3.       Century Surety analysis of contract versus tort claims............................12

                  4.       Application of the Century Surety analysis of contract versus tort
                           to the facts in Ewing ................................................................................14

                  5.       The contractual liability exclusion applies to this case and no
                           exception to the exclusion applies because the claims sound in
                           contract.....................................................................................................15

         B.       Exclusion j(6)- Insured's Defective Work During Ongoing Operations...............17

         C.       Exclusion k – insured's defective product .........................................................19

         D.       Exclusion l – insured's defective work................................................................22

         E.       Exclusion m – impaired property........................................................................24

III.     No Duty to Defend under Coverage D – Environmental Consultant's Professional
         Liability.........................................................................................................................26

**American Safety Indemnity Company's Amended Motion for Summary Judgment
and Brief in Support –**                                                                    **Page i**
D/857780.2

    A.       Exclusion of Professional Services ........................................................26

    B.       Consultant's Professional Liability Coverage ......................................27

          1.       Part (a) – coverage for "covered damages" arising out of "covered professional activities"................................................................27

          2.       Part (b) – Trigger provisions ....................................................28

    C.       CPL Endorsement Exclusions................................................................34

IV.    Effect of Claims in First Amended Complaint ..................................................36

Duty to Indemnify.....................................................................................................37

ASIC Excess Policy ...................................................................................................38

Conclusion .................................................................................................................38

# TABLE OF AUTHORITIES

## CASES

*Adamo v. State Farm Lloyds Co.*,
   853 S.W.2d 673 (Tex. App. - Houston [14th Dist.] 1993, writ denied) .................7, 16

*Admiral Insurance Company v. Little Big Inch Pipeline Co., Inc.*,
   523 F. Supp.2d 524 (W.D. Tex. 2007).........................................................18

*Allstate Ins. Co. v. Disability Svcs. of the Southwest, Inc.*,
   400 F.3d 260 (5th Cir. 2005) ..................................................................3

*Allstate Ins. Co. v. Hicks*,
   134 S.W.3d 304 (Tex. App. - Amarillo 2003, no pet.) ..................................8

*American Physicians Ins. Exch. v. Garcia*,
   876 S.W.2d 842 (Tex. 1994).....................................................................8

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)...............................................................................2

*Bituminous Cas. Corp. v. Maxey*,
   110 S.W.3d 203 (Tex. App. - Houston [1st Dist.] 2003, pet. denied.) .......................32

*Cabrol v. Town of Youngsville*,
   106 F.3d 101 (5th Cir. 1997) ..................................................................3

*Campo v. Allstate Ins. Co.*,
   562 F.3d 751 (5th Cir. 2009) ..................................................................3

*Century Surety Co. v. Hardscape Construction Specialists, Inc.*,
   578 F.3d 262 (5th Cir. 2009) ....................................................11, 13, 14, 15, 16

*Cullen/Frost Bank of Dallas, N.A. v. Commonwealth Lloyd's Ins. Co.*,
   852 S.W.2d 252 (Tex. App. - Dallas 1993, writ denied) ..........................7, 8

*D.R. Horton - Texas, Ltd. v. Markel Int'l Ins. Co.*,
   300 S.W.3d 740 (Tex. 2009)......................................................................37

*Dal-Tile Corp. v. Zurich Amer. Ins. Co.*,
   2004 U.S. Dist. LEXIS 14103 (N.D. Tex. 2004)..................................19, 23

*Duininck Brothers, Inc. v. Howe Precast, Inc.*,

**American Safety Indemnity Company's Amended Motion for Summary Judgment
and Brief in Support –**                                                    **Page iii**
D/857780.2

2008 U.S. Dist. LEXIS 70938 (E.D. Tex. 2008) .....................................................18, 19

*East Tex. Medical Center Regional Healthcare System v. Lexington Ins. Co.*,
2011 U.S. Dist. LEXIS 18918 (E.D. Tex. Feb. 25, 2011) ...........................................34

*Ewing Constr., Inc. v. Amerisure Ins. Co.*,
__ F. Supp.2d __, 2011 WL 1627047 (S.D. Tex. 2011).................................11, 14, 15

*FDIC v. Mijalis*,
15 F.3d 1314 (5th Cir.1994) ......................................................................................30

*Farmers Tex. County Mut. Ins. v. Griffin*,
955 S.W.2d 81 (Tex. 1997).......................................................................................37

*Forbau v. Aetna Life Ins. Co.*,
876 S.W.2d 132 (Tex. 1994)................................................................................20, 21

*Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*,
327 S.W.3d 118 (Tex. 2010)....................................................................10, 11, 12, 13

*Hartford Cas. Co. v. Cruse*,
938 F.2d 601 (5th Cir. 1991) .......................................................................................9

*Jim Johnson Homes, Inc. v. Mid-Continent Casualty Company*,
244 F. Supp. 2d 706 (N.D. Tex. 2003) .......................................................................18

*LaBatt Co. v. Hartford Lloyd's Ins. Co.*,
776 S.W.2d 795 (Tex. App. - Corpus Christi 1989, no pet.).......................................22

*Lafarge Corp. v. Hartford Cas. Ins. Co.*,
61 F.3d 389 (5th Cir. 1995) .......................................................................................37

*Lamar Homes, Inc. v. Mid-Continent Cas. Co.*,
242 S.W.3d 1 (Tex. 2007)......................................................................................9, 11

*Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*,
174 F.3d 653 (5th Cir. 1999) ...............................................................................30, 34

*McCarthy Bros. Co. v. Continental Lloyds Ins. Co.*,
7 S.W.3d 725 (Tex. App. - Austin 1999, no pet.)........................................................7

*McCullough v. Fidelity & Deposit Co.*,
2 F.3d 110 (5th Cir.1993) ..........................................................................................30

*McKinney Builders II, Ltd. v. Nationwide Mut. Ins. Co.*, No. CIV. A. 3:97-CV-3053,

**American Safety Indemnity Company's Amended Motion for Summary Judgment
and Brief in Support –** **Page iv**
D/857780.2

1999 WL 608851 (N.D. Tex. 1999).................................................................25

*Mesa Operating Co. v. California Union Ins. Co.*,
986 S.W.2d 749 (Tex. App. -- Dallas 1999, pet denied) ...........................21

*Mt. Hawley Ins. Co. v. Steve Roberts Custom Builders, Inc.*,
215  F.Supp.2d 783 (E.D.Tex. 2002).........................................................24

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Willis*,
296 F.3d 336 (5th Cir. 2002) ...................................................................30

*National Union Fire Ins. Co. v. CBI Indus.*,
907 S.W.2d 517 (Tex. 1995)....................................................................20

*National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*,
939 S.W.2d 139 (Tex. 1997)........................................................7, 8, 13, 16

*Northfield Ins. Co. v. Loving Home Care, Inc.*,
363 F.3d 523 (5th Cir. 2004) .....................................................................3

*Prodigy Comm. Corp. v. Agricultural Excess & Surplus Ins. Co.*,
288 S.W.3d 374 (Tex. 2009).................................................................30, 34

*Southwest Bell Tel. Co. v. DeLanney*,
809 S.W.2d 493 (Tex. 1991).....................................................................13

*Southwest Tank and Treater Manufacturing Co. v. Mid-Continent Casualty Company*,
243 F. Supp.2d 597 (E.D. Texas 2003).....................................................18

*State Farm Life Ins. Co. v. Beaston*,
907 S.W.2d 430 (Tex. 1995).................................................................20, 21

*Terra Int'l, Inc. v. Commonwealth Lloyd's Ins. Co.*,
829 S.W.2d 270 (Tex. App. - Dallas 1992, writ denied) .............................8

*Texas Prop. & Cas. Ins. Guar. Ass'n. v. Southwest Aggregates, Inc.*,
982 S.W.2d 600 (Tex. App. - Austin 1998, no pet.).....................................7

*United Serv. Auto Ass'n v. Miles*,
139 Tex. 138, 161 S.W.2d 1048 (Tex. 1942) ............................................21

*Westchester Fire Ins. v. Heddington Ins. Ltd.*,
883 F.Supp. 158 (S.D.Tex.1995), *aff'd*, 84 F.3d 432 (5th Cir.1996)..........21

*Wilshire Ins. Co. v. RJT Const., LLC*,

**American Safety Indemnity Company's Amended Motion for Summary Judgment
and Brief in Support –**                                                                **Page v**
D/857780.2

581 F.3d 222 (5th Cir. 2009) ...............................................................................22, 23

*Zurich Am. Ins. Co. v. Nokia, Inc.*,
    268 S.W.3d 487 (Tex. 2008)...........................................................................9

## STATUTES

Fed. R. Civ. P. 56(c) ...........................................................................................2

Fed. R. Civ. P. 56...............................................................................................2

## MISCELLANEOUS

4 Holmes' Appleman on Insurance 2d, § 20.1 (1998) ..................................21, 22

Joseph G. Blute, *Analyzing Liability Insurance Coverage for Construction
    Industry Property Damage Claims*, Coverage (Committee on Insurance
    Coverage Litigation Report), May/June 1997, at 31....................................25

W. KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS §
    92, at 655 (5th ed. 1984) ...........................................................................13

**American Safety Indemnity Company's Amended Motion for Summary Judgment
and Brief in Support –**                                                  **Page vi**
D/857780.2

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| GULF COAST ENVIRONMENTAL SYSTEMS, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 4:11-cv-02753 |
| AMERICAN SAFETY INDEMNITY COMPANY and ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY, | § § § § § | |
| Defendants. | § | |

---

## AMERICAN SAFETY INDEMNITY COMPANY'S
## AMENDED MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW Defendant American Safety Indemnity Company ("ASIC") and files this Amended Motion for Summary Judgment and Brief in Support and would respectfully show the court as follows:

### NATURE AND STAGE OF PROCEEDING

This is an insurance coverage dispute. The plaintiff Gulf Coast Environmental Systems LLC ("Gulf Coast") is an insured under a commercial liability policy and an excess policy issued by ASIC. Gulf Coast is the defendant in an underlying suit in Pennsylvania state court. Gulf Coast brought this coverage action against ASIC seeking a declaration of ASIC's coverage obligations. ASIC denies that it has an obligation to defend or indemnify Gulf Coast against the claims in the underlying suit.

Pursuant to the agreed scheduling order entered by the Court, the parties have exchanged disclosures but otherwise have not conducted discovery because the parties seek to first obtain the Court's ruling on the legal issues that will resolve some or all of the issues presented in the case. ASIC submits this motion for summary judgment asserting that, as a matter of law, it does not owe a duty to defend or indemnify Gulf Coast under the ASIC policies against the claims in the underlying suit.

## ISSUES AND STANDARD OF REVIEW

1.   ASIC has no duty to defend Gulf Coast under Coverage A of the ASIC primary policy (bodily injury and property damage liability coverage) because the claims in the underlying suit are excluded under the business risk exclusions.

2.   ASIC has no duty to defend Gulf Coast under Coverage D of the ASIC primary policy (consultant's professional liability coverage) because Coverage D was not triggered by the underlying suit, no "covered damages" are alleged in the underlying suit, and the claims in the underlying suit are excluded under that coverage part.

3.   ASIC has no duty to indemnify Gulf Coast under the ASIC primary policy for the same reasons that negate ASIC's duty to defend.

4.   ASIC has no duty to defend or indemnify Gulf Coast under the ASIC excess policy because ASIC has no duty to defend or indemnify Gulf Coast under the primary policy, the underlying policy has not been exhausted, and the claims are excluded under the terms of the excess policy.

The standard of review for all of the above issues is the same. Under Fed. R. Civ. P. 56, summary judgment is appropriate when no genuine issue exists as to any material fact, and the movant proves it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). The Fifth Circuit Court of Appeals can affirm

this Court's judgment on any legal ground supported in the record and is not limited to the bases stated in the Court's order or memorandum opinion. *E.g., Cabrol v. Town of Youngsville*, 106 F.3d 101, 105 (5th Cir. 1997). The Fifth Circuit reviews de novo a district court's grant of summary judgment and applies the same rule 56 standard as the district court. *E.g., Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009). More specifically, the Fifth Circuit reviews whether an insurer has a duty to defend or duty to indemnify its insured in an underlying suit as a de novo question of law. *E.g., Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 527-28 (5th Cir. 2004); *see also generally Allstate Ins. Co. v. Disability Svcs. of the Southwest, Inc.*, 400 F.3d 260, 263 (5th Cir. 2005) (interpretation of insurance policy is question of law reviewed de novo).

## SUMMARY OF THE ARGUMENT

ASIC has no duty to defend or indemnify Gulf Coast against the claims asserted against Gulf Coast in the underlying suit. The claims are not covered by the insuring agreements of either the ASIC commercial liability coverage or the professional liability coverage in the ASIC policy. Moreover, even if the claims were covered by the insuring agreements in the policies, the claims are excluded by multiple exclusions. Further, the claims-made and reported professional liability coverage was never triggered because Gulf Coast failed to provide timely notice of the claims to ASIC. Finally, ASIC has no duty to defend or indemnify Gulf Coast under the ASIC excess policy because the excess policy is not triggered until the underlying primary policy is exhausted, which has not happened, and because the claims are excluded by that policy as well. For these reasons, discussed in detail below, ASIC is entitled to judgment as a matter of law dismissing all claims asserted by Gulf Coast against it in this lawsuit.

<u>FACTS</u>

## I.      <u>The Insurance Policies</u>

1.      ASIC insures Gulf Coast under Commercial General Liability Policy ENV022206-09-01,

effective March 8, 2009 through May 26, 2010 ("ASIC policy").[1]

2.      ASIC also insures Gulf Coast under Commercial Excess Liability (Limited Umbrella)

Insurance Policy ENU022212-09-01, effective March 8, 2009 through May 26, 2010

("ASIC excess policy").[2]

3.      Endurance American Specialty Insurance Company ("Endurance") insures Gulf Coast

under Policy No. ECC101010501-00, effective May 26, 2010 through May 26, 2011

("Endurance policy").[3]

4.      Endurance also insures Gulf Coast under Excess Policy No. EXS101010502-00 effective

May 26, 2010 through May 26, 2011 ("Endurance excess policy").[4]

## II.     <u>The Underlying Suit</u>

5.      Gulf Coast was sued by Piramal Critical Care, Inc. (f/k/a Minrad, Inc.) in Cause No. C 48

CV 2010 4715, in the Court of Common Pleas of Northampton County, Pennsylvania

(the "underlying suit").[5]  Piramal makes the following allegations in the underlying suit:

Piramal is a pharmaceutical manufacturing company in Bethlehem, Pennsylvania.  App.

at 242 ¶¶ 1, 4.  On June 8, 2009, Gulf Coast and Piramal entered into an agreement under

---

[1] A true and correct copy of the ASIC primary policy is included in the appendix at p. 3-79 (*see also* Affidavit of Jean Fisher, app. at 1-2).  The original expiration of the ASIC primary policy (March 8, 2010) was extended by endorsement ENV 98 073 11 04.  App. at 4.

[2] A true and correct copy of the ASIC excess policy is included in the appendix at p. 80-107 (*see also* Affidavit of Jean Fisher, app. at 1-2).  The original expiration of the ASIC excess policy was extended by endorsement 002.  App. at 80.

[3] A copy of the Endurance policy is included in the appendix at 108-214.  This copy of the policy was produced by Endurance.

[4] A copy of the Endurance excess policy is included in the appendix at p. 215-241.  This copy of the policy was produced by Gulf Coast (Endurance did not produce a copy of its (excess policy).

[5] *See* Plaintiff's First Amended Complaint in the underlying suit, a copy of which is included in the appendix at p. 242-252.

which Gulf Coast agreed to manufacture, deliver and install a thermal oxidizer ("RTO") at Piramal's Bethlehem facility that would satisfy the requirements of the Pennsylvania Department of Environmental Protection ("PADEP"). App. at 243 ¶ 6.

6.   Piramal alleges that Gulf Coast knew that if Piramal failed to satisfy PADEP's requirements Piramal would be subject to potential monetary penalties. *Id.* ¶ 7. In late December 2009, Piramal allegedly entered into a consent order with PADEP which required Piramal to have a fully functional RTO on-line and meeting certain environmental criteria by May 10, 2010. *Id.* ¶ 8.

7.   Gulf Coast manufactured, delivered and installed the RTO which originally went on-line on February 26, 2010. *Id.* ¶ 12. Piramal claims that the agreement between it and Gulf Coast required Gulf Coast to successfully commission the system by running it for a period of 30 days with the final exhaust as well as the resultant effluent meeting the design parameters and PADEP requirements, and also meeting all warranties and guaranties. App. at 244 ¶ 13. If the commissioning initially failed, the agreement provided Gulf Coast with a three-month opportunity to successfully re-commission the system. *Id.* ¶ 14.

8.   Piramal contends that on March 1, 2010, Gulf Coast failed to properly commission the system. *Id.* ¶ 15. Piramal further alleges that from February 26, 2010, to date the RTO has failed to properly function despite numerous efforts by both Piramal and Gulf Cost to repair and/or modify the equipment. *Id.* ¶ 16.

9.   Piramal claims that in late April 2010 the parties determined that the reason the RTO failed to properly function was because Gulf Coast failed to properly design the RTO to destruct chloro-fluorocarbons as required by the parties' agreement. *Id.* ¶ 17. Piramal

additionally claims that Gulf Coast failed to properly manufacture a scrubber system and that it purchased a scrubber system as part of the RTO which was defectively designed and manufactured and flooded and damaged parts of the RTO. *Id.* ¶ 18; App. at 251 ¶ 58. On April 24, 2010, Piramal advised Gulf Coast that it had until June 1, 2010, to successfully re-commission the system as required by the Agreement. App. at 244 ¶ 19. On April 25, 2010, Gulf Coast allegedly advised Piramal that it was not responsible for the failed design. *Id.* ¶ 20.

10.    Piramal alleges that, under the terms of the parties' agreement, it is entitled to recover the entire cost of the RTO and that Gulf Coast is responsible for dismantling and removing the RTO from Piramal's facility. App. at 244-45. ¶ 21. Piramal also alleges that Gulf Coast's failure to deliver a properly functioning RTO and scrubber will cause it to incur money penalties from PADEP and other (unspecified) consequential damages. App. at 245 ¶ 22.

11.    Piramal filed a complaint against Gulf Coast which asserts several breach of contract claims against Gulf Coast: Failure to manufacture, deliver, install and commission a RTO and scrubber which satisfied the requirements of PADEP; failure to successfully commission the RTO to meet the environment criteria in the agreement; failure to perform its services in a professional manner and in conformance with the requirements of the agreement, failure to exercise reasonable care in the engineering, design, manufacturing, delivery, installation and commissioning for the RTO, breach of express warranties, and professional negligence. App. at 245-251 ¶¶ 24-44, 52-60. Piramal additionally asserts a claim for quantum meruit or unjust enrichment. App. at 249-50 ¶¶ 45-51.

**American Safety Indemnity Company's Amended Motion for Summary Judgment
and Brief in Support –**                                                                                 **Page 6**
D/857780.2

12.    The claim was first reported by Gulf Coast to ASIC on June 25, 2010.[6]

## III.   The Coverage Lawsuit

13.    In this coverage lawsuit, Gulf Coast seeks a declaration that ASIC has a duty to defend Gulf Coast against the claims in the underlying suit and an obligation to indemnify Gulf Coast for any liability incurred by Gulf Coast in the underlying suit.

14.    For the reasons discussed below, ASIC is entitled to judgment as a matter of law that it has no duty to defend or indemnify Gulf Coast against the claims asserted in the underlying suit.

**ARGUMENT AND AUTHORITY**
**DUTY TO DEFEND**

## I.   Determination of Duty to Defend under Texas Law

Under Texas law, the duty to defend is determined by the "eight corners" rule, also known as the "complaint allegations" rule. *National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997); *Texas Prop. & Cas. Ins. Guar. Ass'n. v. Southwest Aggregates, Inc.*, 982 S.W.2d 600, 604 (Tex. App. – Austin 1998, no pet.). Under the "eight corners" rule, the court may consider the allegations in the underlying complaint and the terms of the insurance policy to determine whether a duty to defend exists. *McCarthy Bros. Co. v. Continental Lloyds Ins. Co.*, 7 S.W.3d 725, 728 (Tex. App. – Austin 1999, no pet.); *Cullen/Frost Bank of Dallas, N.A. v. Commonwealth Lloyd's Ins. Co.*, 852 S.W.2d 252, 255 (Tex. App. – Dallas 1993, writ denied).

The duty to defend is not dependent upon the legal theories alleged within the pleading, but rather the factual allegations that demonstrate the origin of the plaintiff's damages. *National Union Fire Ins.*, 939 S.W.2d at 141; *Adamo v. State Farm Lloyds Co.,* 853 S.W.2d 673, 676

---

[6] *See* App. at 107 (*see also* Affidavit of Jean Fisher, App. at 2).

(Tex. App. – Houston [14th Dist.] 1993, writ denied). Moreover, the duty to defend is not affected by the facts of the case ascertained before, during or after the suit. *Cullen/Frost Bank of Dallas*, 852 S.W.2d at 255. If the underlying pleading alleges facts that are potentially within the scope of coverage, the insurer owes the insured a defense. *American Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 848 (Tex. 1994).

Potential coverage exists where the factual allegations in the underlying petition permit the introduction of evidence on a theory of recovery within the scope of the policy. *Terra Int'l, Inc. v. Commonwealth Lloyd's Ins. Co.*, 829 S.W.2d 270, 271 (Tex. App. – Dallas 1992, writ denied). However, if the underlying petition does not allege facts within the scope of coverage, the insurer has no duty to defend. *Cullen/Frost Bank of Dallas*, 852 S.W.2d at 255. Further, in determining the duty to defend, Courts may not read facts into the pleadings, look outside the pleadings or imagine factual scenarios which might trigger coverage. *Allstate Ins. Co. v. Hicks*, 134 S.W.3d 304, 311 (Tex. App. – Amarillo 2003, no pet.); *National Union Fire Ins.*, 939 S.W.2d at 142.

In this case Gulf Coast seeks a defense under both Coverage A (Bodily Injury and Property Damage Liability) and Coverage D (Environmental Consultant's Professional Liability) of the ASIC policy. For the reasons discussed below, ASIC does not have a duty to defend Gulf Coast under either coverage part of the policy.

## II.  No Duty to Defend Under Coverage A – Bodily Injury and Property Damage Liability

The claims alleged in the underlying suit are excluded by one or more of the CGL business risk exclusions:

> Coverage under a commercial general liability insurance policy is for tort liability for physical damages to others *and not for contractual liability of the insured for economic loss because the product or work is not that for which the damaged person bargained*. Pursuant to this understanding, certain exclusions have been

included within the standard commercial general liability policy for the express purpose of excluding coverage for risks relating to the repair or replacement of the insured's faulty work or products, or defects in the insured's work or product itself. These "business risk" exclusions, as they are commonly called, are intended to provide coverage for tort liability, not for the contractual liability of the insured for loss which takes place due to the fact that the product or completed work was not that for which the other party had bargained.

*Zurich Am. Ins. Co. v. Nokia, Inc*., 268 S.W.3d 487, 500 (Tex. 2008) (emphasis added); *see also Hartford Cas. Co. v. Cruse*, 938 F.2d 601, 603 (5th Cir. 1991) (contractor cannot recover from the insurer for his own failure to perform his contract); *Lamar Homes*, 242 S.W.3d at 10 ("More often ... faulty workmanship will be excluded from coverage by specific exclusions because that is the CGL's structure. The CGL's insuring agreement grants the insured broad coverage for property damage and bodily injury liability, which is then narrowed by exclusions that restrict and shape the coverage otherwise afforded."). The justification for treating these risks differently is that the insured can control the quality of the goods and services it supplies, while accidental injury to property or persons exposes the insured to almost limitless liability. *Hartford Cas. Co.*, 938 F.2d at 603.

Several business risk exclusions in the ASIC policy apply to the allegations in the underlying suit.

### A.    Exclusion b: Contractual Liability Exclusion

The contractual liability exclusion (exclusion "b") excludes:

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1)    That the insured would have in the absence of the contract or agreement; or

(2)    Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. . . .

App. at 29.

      1.      ***Construction of contractual liability exclusion by Texas Supreme Court in Gilbert Tex. Constr. V. Underwriters at Lloyd's London***

The Texas Supreme Court interpreted the contractual liability exclusion in the seminal case of *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118 (Tex. 2010) (op. on reh'g), explaining that this exclusion "[c]onsidered as a whole, . . . provide[s] that the policy does not apply to bodily injury or property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement, except for enumerated, specific types of contracts called 'insured contracts' and except for instances in which the insured would have liability apart from the contract." *Id.* at 126.[7]

With respect to the "assumption of liability" part of the exclusion, the Supreme Court held that the exclusion is not limited to situations where the "insured assumes the liability of another, such as an indemnity or hold-harmless agreement," but rather "applies without qualification to liability assumed by contract [with the two exceptions stated in the exclusion]." *Id.* at 128-29. "*Gilbert*, therefore, stands for the proposition that the contractual liability exclusion applies when an insured has entered into a contract and, by doing so, has assumed

---

[7] The "insured contract" exception to the contractual liability exclusion (subpart (2) to the exclusion) does not apply to this case on its face. An "insured contract" is defined (in relevant part) as:

      f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability *of another party* to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

App. at 40 (emphasis added). Here, there are no allegations that Gulf Coast assumed any type of liability "of another." Piramal sued Gulf Coast for its own liability under the contract for the RTO. App. at 242-252. This exception to the exclusion thus has no application to this case. The second exception to the exclusion, for liability the insured would have in the absence of the contract or agreement, is discussed in detail below.

liability for its own performance under that contract." *Ewing Constr., Inc. v. Amerisure Ins. Co.*, __ F. Supp.2d __, 2011 WL 1627047 at *6 (S.D. Tex. 2011).[8]

### 2. *Application of Gilbert to duty to defend case*

*Gilbert* involved the duty to indemnify rather than the duty to defend. The federal district court for the Southern District of Texas applied *Gilbert* to a duty to defend case in *Ewing*. In that case an insured sought declaratory judgment against its CGL insurer that the insurer was obligated to defend the insured in an underlying lawsuit brought against the insured based on the insured's alleged defective construction of a tennis facility built on school grounds.

After initially determining that the contractual liability exclusion was applicable because the insured assumed liability under its construction contract with the underlying plaintiff, the court analyzed the applicability of the first exception to the exclusion – liability that "the insured would have in the absence of the contract or agreement." *Id.* at *8. Like the claims asserted in the underlying suit here, the plaintiff in the underlying suit in *Ewing* asserted both negligence and breach of contract claims. *Id.* The *Ewing* court, however, looked beyond the label placed on the claims asserted in the suit and held that the claims sounded in contract, not in tort. *Id.* at *8-12. The *Ewing* court relied on *Century Surety Co. v. Hardscape Construction Specialists, Inc.*, 578 F.3d 262 (5th Cir. 2009) in the contract versus tort analysis.[9] In *Century Surety*, the Fifth Circuit applied the contractual liability exclusion to a construction defect case, distinguishing between damages that arise from contract and those that arise from tort.

---

[8] Included in the appendix at p. 266.
[9] While the Supreme Court held that it makes no difference whether contract or tort claims are pled when considering whether allegations are an "occurrence" under the insuring agreement of a CGL policy, *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 13 (Tex. 2007), the contract/tort distinction is the key question when considering whether allegations trigger the first exception to the contractual liability exclusion. *Gilbert,* 327 S.W.3d at 132. The contract/tort analysis applied in *Century Surety* and *Ewing* (both discussed below) is thus determinative of whether the first exception to the contractual liability exclusion applies.

American Safety Indemnity Company's Amended Motion for Summary Judgment
and Brief in Support –                                                                                          **Page 11**
D/857780.2

### 3. *Century Surety analysis of contract versus tort claims*

In that case, Century Surety insured Elite Concepts under a CGL policy. Hillwood Residential and Hardscape entered into a contract for Hardscape to construct the swimming pool facilities at Hillwood's residential development. Hardscape, in turn, subcontracted with Elite to construct the swimming pool (and surrounding deck). After completion of the project, Hillwood sued Hardscape, Elite, Wang (the engineer) and Tornado (who drilled the piers), alleging various defects in the construction of the pool. Hardscape demanded that Elite defend and indemnify it pursuant to their subcontract. Hardscape made the same demand upon Century. Century then sought declaratory relief against Hillwood, Hardscape and Elite, alleging (among other things) the applicability of the "contractual liability" exclusion of Century's policy.

On cross motions for summary judgment, the United States District Court for the Northern District of Texas held in favor of Elite. *Id*. at 265. The Fifth Circuit affirmed, holding that Hardscape did not meet its burden to prove that its claim against Elite fell within the exception to the contractual liability exclusion. *Id*. at 269. In reaching this conclusion, the Court held that the exception to the contractual liability exclusion is triggered only when the underlying claim sounds in tort, not contract. *Id*. at 266.

Once it determined that the contractual liability exception in the policy applied only to tort liability, the court had to determine whether the allegations in the underlying lawsuit were contractual or tort. The Fifth Circuit explained:

> To determine the nature of a Texas lawsuit "[w]e must look to the substance of the cause of action and not necessarily the manner in which it was pleaded." Texas courts characterize actions as tort or contract by focusing on the source of liability and the nature of the plaintiff's loss.

*Id*. at 267 (quoting *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 617-18 (Tex. 1986)). The court expanded on this concept relying on a previous decision:

As one prominent authority has explained: "Tort obligations are in general obligations that are imposed by law--apart from and independent of promises made and therefore apart from the manifested intention of the parties-- to avoid injury to others." If the defendant's conduct –such as negligently burning down a house--would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort. Conversely, if the defendant's conduct--such as failing to publish an advertisement--would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract.

In determining whether the plaintiff may recover on a tort theory, it is also instructive to examine the nature of the plaintiff's loss. When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract.

*Id*. (citing *Southwest Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494-95 & n.2 (Tex. 1991) and quoting W. KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 92, at 655 (5th ed. 1984)).

Thus armed, the Fifth Circuit scrutinized the allegations made in the petition. The plaintiff in *Century Surety* pled its lawsuit in negligence terms. Nevertheless, the court recognized that in the context of an analysis of an insurer's duty to defend under an insurance policy, the court must focus on the facts alleged in the pleadings, not on the legal theories. *National Union Fire Ins. Co.*, 939 S.W.2d at 141 (it is not the cause of action alleged that determines coverage, but the facts giving rise to the alleged conduct). The court ultimately held that the allegations "are easily classified as giving rise to contract claims – namely, because the damages occurred only to the subject matter of the Hillwood-Hardscape contract, and because no liability would arise independently of the contract." *Century Surety*, 578 F.3d at 267. Thus, the court held that allegations of failure to properly design and construct the pools causing cracks in the walls, aesthetic damage, and pool structural damage were contractual claims. *Id*. Similarly, the resulting need to identify, diagnose, and correct the design and construction defects gave rise only to contractual claims. *Id.; DeLanney*, 809 S.W.2d at 494-95 & n.2. As such, the Court held

that the contractual liability exclusion contained in Century's policy applied to the claims made. *Century Surety*, 578 F.3d at 269.

       4.     ***Application of the Century Surety analysis of contract versus tort to the facts in Ewing***

The *Ewing* court applied the *Century Surety* analysis and similarly concluded that the factual allegations in *Ewing* sounded in contract, not in tort. *Ewing*, 2011 WL 1627047 at *11. The plaintiff alleged that the tennis courts, the subject matter of the contract between the plaintiff and insured defendant, began to crack and show other structural defects soon after construction was completed. *Id.* The damage alleged by the plaintiff was damage to the subject matter of the contract, nothing else. *Id.* The plaintiff did not seek damages to, or recovery for, any other property not covered by the contract. *Id.*

Further, the plaintiff alleged that it wanted "quality tennis courts that should last at least twenty-five years," that the insured represented that it could perform the work, and based upon these assurances the parties entered into the contract. *Id.* The plaintiff alleged that the insured's actions "constitute breach of contract," as "[t]he construction is not in accordance with the contract plans and specifications." *Id.* The plaintiff also alleged in the alternative that the insured "breached its implied duty of ordinary care to Plaintiff through its negligence in the preparation and management of construction." *Id.* The plaintiff's negligence claim was also based solely upon the insured's alleged failures in the tennis court construction process, such as failure to properly prepare for and manage construction, failure to properly retain and oversee subcontractors, and failing to take corrective action. *Id.* The court held that the claims alleged in *Ewing* were all purely contractual claims and the exception to the contractual liability exclusion therefore did not apply. *Id.* For this reason the claims in the underlying suit were excluded by the contractual liability exclusion and the insurer had no duty to defend. *Id.*

5. ***The contractual liability exclusion applies to this case and no exception to the exclusion applies because the claims sound in contract***

The contractual liability exclusion likewise applies to exclude ASIC's duty to defend Gulf Coast in the underlying suit. Piramal asserts claims for breach of contract, which fall squarely within the exclusion for contractual liability – Piramal asserts Gulf Coast is obligated to pay Piramal by reason of its contract with Gulf Coast. App. at 242-252.

The first exception to the exclusion, for liability that the insured would have in the absence of the contract or agreement, does not apply here under the *Gilbert*, *Ewing*, and *Century Surety* analysis discussed above (all binding precedent) because the claims undoubtedly sound in contract, not in tort. The essence of Piramal's allegations are that the RTO and scrubber do not work as they were supposed to under the terms of the contract with Gulf Coast. App. at 242-252. Piramal's allegations are all based on Gulf Coast's obligations, guaranties, and warranties to Piramal in the RTO contract. *Id.* Allegations of failure to properly design and construct a product are contractual claims. *Century Surety*, 578 F.3d at 269.

More specifically, the facts alleged in the underlying suit are that Gulf Coast failed to perform under its contract with Piramal because it delivered an RTO that was defectively designed and defectively manufactured. App. at 244 ¶¶ 17-18; App. at 251 ¶ 58. Under the *Century Surety* and *Ewing* holdings discussed above these are the exact types of claims that are excluded by the contractual liability exclusion. *See Century Surety*, 578 F.3d at 267; *Ewing*, 2011 WL 1627047 at *11. Likewise, the only damage alleged by Piramal is damage to the subject matter of the contract, nothing else, and is based on the delivered RTO and scrubber which allegedly were not in compliance with the contracted requirements and specifications. App. at 242-252. Purely economic damages are another indicator of a claim based in contract. *Century Surety*, 578 F.3d at 267; *Ewing*, 2011 WL 1627047 at *11.

The allegations regarding the defective scrubber (added in the amended complaint in a bald-faced attempt to plead the suit within coverage) still do not allege any damage to property other than the subject matter of the contract between Piramal and Gulf Coast because the scrubber was allegedly a component of the RTO itself. App. at 251 ¶ 58. The damages sought by Piramal regarding the scrubber are damages Gulf Coast is obligated to pay Piramal because it allegedly failed to perform its contractual obligations. The allegations related to the allegedly defective scrubber thus raise only contract claims.

While Piramal may couch some of its allegations in "professional negligence" terms (App. at 250-251), the duty to defend is not dependent upon the legal theories alleged, but the factual allegations that demonstrate the origin of the plaintiff's damages. *Century Surety,* 578 F.3d at 267; *National Union Fire Ins.*, 939 S.W.2d at 141; *Adamo*, 853 S.W.2d at 676. The facts alleged in the underlying suit sound only in contract; thus, the first exception to the contractual liability exclusion does not apply.

Moreover, to the extent that Piramal alleges "professional negligence," these allegations would be covered only under Coverage D of the ASIC policy (if at all), and this coverage was never triggered as discussed below in Section III.B.2. Further, even if Coverage D was triggered, the claims are excluded by the contractual liability exclusion in Coverage D for the same reasons the claims are excluded under the contractual liability exclusion in Coverage A.

The other exception to the contractual liability exclusion - the "insured contract" exception - also does not apply because Gulf Coast is not sued for an "insured contract" (e.g. indemnity) nor are there allegations that Gulf Coast assumed any type of liability "of another," which generally would require a suit against Piramal, whereas here Piramal is the plaintiff that is simply claiming breach. Consequently, as a matter of law the claims asserted against Gulf Coast

in the underlying suit are excluded by exclusion b, the contractual liability exclusion in the ASIC

policy.  App. at 29.

## B.    Exclusion j(6)- Insured's Defective Work During Ongoing Operations

Exclusion j(6) to Coverage A excludes, in relevant part:

### (j)    Damage to Property

"Property damage: to: . . .

 (6)    That particular part of any property that must be restored, repaired or replaced because "your work"[10] was incorrectly performed on it. . . .

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."[11]

App. at 31-32.

---

[10] "Your work" is defined as follows:
    (1)    Work or operations performed by you or on your behalf; and
    (2)    Materials, parts or equipment furnished in connection with such work or operations.
And includes:
    (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and
    (2)    Materials, parts or equipment furnished in connection with such work or operations.
App. at 42.

[11] "Products-completed operations hazard" means:
    a.    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
    (1)    Products that are still in your physical possession; or
    (2)    Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
    (a)    When all of the work called for in your contract has been completed.
    (b)    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
    (c)    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.
    b.    Does not include "bodily injury" or "property damage" arising out of:
    (1)    The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;
    (2)    The existence of tools, uninstalled equipment or abandoned or unused materials; or
    (3)    Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that the products-completed operations are subject to the General Aggregate Limit.
App. at 41.

In *Admiral Insurance Company v. Little Big Inch Pipeline Co., Inc.,* 523 F. Supp.2d 524, (W.D. Tex. 2007), the insured was removing gas lines in a mobile home park that was being converted into a residential subdivision. The insured's construction work caused damage to pipes, foundations, concrete slabs, and piles of debris, as well as to the real property upon which the damaged items were located. The Court held that the rationale behind exclusion j(6) is to protect the insurer from attempts by the insured to recover sums paid to correct deficiencies resulting from the insured's own questionable performance. *Id*. at 541. The cost of an insured not performing well is a cost of doing business and is not considered part of the risk sharing scheme for which general liability policies are written. *Id*. For this reason, an insured cannot recover from the insurer for his failure to perform his contract properly – he can recover only if his defective work causes damages to other property other than his own work. *Id*.

Likewise, in *Jim Johnson Homes, Inc. v. Mid-Continent Casualty Company*, 244 F. Supp. 2d 706 (N.D. Tex. 2003), homeowners noticed and reported damage prior to completion of their home. The court held that exclusions j(5) and j(6) applied to claims for construction defects (including the foundation and framing) against the insured homebuilder where the damage began and was reported prior to the completion of the construction contract. Thus, exclusion j(6) applies to damage that results from the insured's work and that occurs during ongoing operations or operations that are not yet completed. *Id*. at 717; *Admiral Insurance Company*, 523 F. Supp.2d at 541; *Southwest Tank and Treater Manufacturing Co. v. Mid-Continent Casualty Company*, 243 F. Supp.2d 597, 603-04 (E.D. Texas 2003).

The Eastern District federal court interpreted the term "ongoing operations" in *Duininck Brothers, Inc. v. Howe Precast, Inc.,* 2008 U.S. Dist. LEXIS 70938 (E.D. Tex. 2008). The court looked to the terms of the operative construction contract and held that as long as the insured had

not completed its obligations under the construction contract, operations were not complete. *Id.* at *22. Here, Piramal alleges that the Gulf Coast/Piramal contract required Gulf Coast to successfully commission the system by running it for a period of 30 days with the final exhaust as well as the resultant effluent meeting the design parameters and PADEP requirements, and also meeting all warranties and guaranties. App. at 244 ¶ 13. Piramal alleges that Gulf Coast did not ever successfully commission the system. *Id.* ¶ 15-16. Because the contract was not complete until the system was successfully commissioned, Piramal alleges that the "property damage" occurred during ongoing operations and/or before Gulf Coast's work was completed. For this reason, as a matter of law the claims in the underlying suit are excluded by exclusion j(6).

### C. Exclusion k – insured's defective product

Exclusion k excludes "property damage" to "your product" arising out of it or any part of it. App. at 32. "Your product":

    a.    Means:

    (1)    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by;

        (a) You . . .

    b.    Includes

    (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product" . . .

App. at 42. A liability policy with an exclusion such as exclusion k does not insure the policyholder against liability for the repair or replacement of his own defective product; it only provides coverage for the insured's liability for damages to *other* property resulting from the defective condition of the product. *Dal-Tile Corp. v. Zurich Amer. Ins. Co.*, 2004 U.S. Dist. Lexis 14103 *15 (N.D. Tex. 2004). Piramal alleges that Gulf Coast manufactured and sold a

defective RTO and scrubber to Piramal. App. at 243-45 ¶¶12-23. Piramal does not allege any damage to *other* property beyond Gulf Coast's products.. Exclusion k consequently excludes ASIC's duty to defend against the allegations in the underlying suit.

The ASIC Policy also contains a Limited Products Liability Coverage Endorsement, ASIC-ENV 98 102 11 04, which provides in relevant part:

In consideration of the payment of premiums, it is hereby agreed that the following shall be added to SECTION I, COVERAGE A and COVERAGE B., Par. 2. of the policy.

This insurance does not apply to "claims" or "suits" "arising from" "your product". Provided, however, that this exclusion shall not apply to the specific product(s), if any, listed below, which are manufactured, distributed or sold by you:

All Thermal Oxidizer units and associated equipment distributed by the Named Insured.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

App. at 66. This endorsement is not an insuring agreement that adds coverage to the policy, nor does it change or negate exclusion k in the ASIC policy. Indeed, the endorsement expressly states, "All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged." *Id.*

Gulf Coast's assertion that this endorsement somehow modifies or negates exclusion k in the ASIC policy is contrary to the plain language of the endorsement and the rules of construction of a policy under Texas law. Both exclusion k and the endorsement can be read in harmony so that each is given effect and neither is inoperative, which is the goal of construing insurance policies. Insurance contracts are subject to the same rules of construction as other contracts. *See State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995); *National Union Fire Ins. Co. v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex. 1995); *Forbau v. Aetna Life Ins.*

*Co.*, 876 S.W.2d 132, 133 (Tex. 1994). The court's primary objective should be to give effect to the written expression of the parties' intent. *See Beaston*, 907 S.W.2d at 433; *Forbau*, 876 S.W.2d at 133. The court should read all parts of the contract together, striving to give meaning to every sentence, clause, and word to avoid rendering any portion inoperative. *See Beaston*, 907 S.W.2d at 433 ("Courts must be particularly wary of isolating from its surroundings or considering apart from other provisions a single phrase, sentence, or section of a contract."); *United Serv. Auto Ass'n v. Miles*, 139 Tex. 138, 161 S.W.2d 1048, 1050 (Tex. 1942).

An endorsement cannot be read apart from the main body of the policy, and provisions added in an endorsement will supersede the previous policy terms only if they are truly in conflict. *Westchester Fire Ins. v. Heddington Ins. Ltd.*, 883 F.Supp. 158, 165 (S.D.Tex.1995), *aff'd*, 84 F.3d 432 (5th Cir.1996); *Mesa Operating Co. v. California Union Ins. Co.*, 986 S.W.2d 749, 754 (Tex. App. -- Dallas 1999, pet denied). The policy and endorsement should be construed together unless they are so much in conflict that they cannot be reconciled. *Westchester Fire*, 883 F.Supp. at 165; *Mesa Operating Co.*, 986 S.W.2d at 754; 4 Holmes' Appleman on Insurance 2d, § 20.1 (1998).

Here, giving meaning to every sentence, clause, and word to avoid rendering any portion inoperative (*see Beaston*, 907 S.W.2d at 433), exclusion k and the Limited Products Liability Coverage Endorsement are not in such conflict that they cannot be reconciled. *Westchester Fire*, 883 F.Supp. at 165; *Mesa Operating Co.*, 986 S.W.2d at 754; 4 Holmes' Appleman on Insurance 2d, § 20.1 (1998). Stated another way, both exclusion k and the Limited Products Liability Endorsement provisions can be given effect.

First, pursuant to the express terms of the Limited Products Liability Endorsement, the endorsement does not modify or replace exclusion k in the policy. Instead, the opposite is true --

the exclusion does not mention exclusion k whatsoever and expressly states, "All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged." Second, the title to the endorsement includes important terms that evidence the intent of the endorsement. The endorsement provides "Limited *Products Liability* Coverage". *Id.* (emphasis added). "Products liability" is defined in Texas as "the liability of a manufacturer or supplier *to a person injured by a product*." *LaBatt Co. v. Hartford Lloyd's Ins. Co.*, 776 S.W.2d 795, 799-800 (Tex. App. – Corpus Christi 1989, no pet.) (emphasis added). Thus, a reasonable interpretation of the exclusion is that it provides coverage for suits against the insured for *bodily injury* caused by one of Gulf Coast's thermal oxidizers, whereas exclusion k applies to "property damage" claims arising from Gulf Coast's product. In other words, exclusion k excludes defective product claims regarding Gulf Coast's products (such as the RTO), and the products liability endorsement excludes products liability suits for bodily injury arising from the insured's products, unless the product is the RTO.

Piramal obviously has not asserted a products liability (i.e. bodily injury) claim in this suit so this endorsement has no application to the underlying claims. As discussed above, however, Piramal's claims fall squarely within the exclusionary language of exclusion k, and for this reason ASIC has no duty to defend Gulf Coast against the underlying claims as a matter of law. ASIC's motion for summary judgment should thus be granted as a matter of law.

### D. Exclusion l – insured's defective work

Exclusion l excludes "property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard." App. at 32.[12] A CGL policy generally protects the insured *only* when his work damages someone else's property. *Wilshire Ins. Co. v. RJT Const.*, LLC, 581 F.3d 222, 226 (5th Cir. 2009). "The 'your work' exclusion

---

[12] See notes 11 and 12, supra, for policy definitions of "your work" and "products-completed operations hazard."

American Safety Indemnity Company's Amended Motion for Summary Judgment
and Brief in Support –                                                                 **Page 22**
D/857780.2

prevents a CGL policy from morphing into a performance bond covering an insured's own work." *Id.* Thus, the exclusion precludes coverage for the cost of repairing the insured's own work, without damage to other property. *Id.*

Both exclusion k and exclusion l apply to exclude coverage for "the insured's faulty products and workmanship." *Dal-Tile Corp. v. Zurich Amer. Ins. Co.,* 2004 U.S. Dist. Lexis 14103 *15 (N.D. Tex. 2004).[13] In that case, Dal-Tile was sued in three lawsuits arising from allegedly defective tile Dal-Tile supplied for projects. Dal-Tile did not install the tile – it only supplied the tile, which began to crack and show other signs of failure after installation. *Id.* at *4. The court held that both exclusion k ("your product") and exclusion l preclude coverage for these claims. *Id.* The claims in this suit similarly arise from Gulf Coast's installation of an allegedly defective RTO and scrubber, i.e. Gulf Coast's own work – with no allegations of damage to any other property. App. at 242-252. Exclusion l accordingly applies to exclude the claims asserted in the underlying suit.

The "subcontractor exception" to this exclusion does not apply. The exception applies only when the *insured's* work damages someone else's property (e.g., the subcontractor's completed work). *Wilshire Ins. Co*, 581 F.3d at 226. Here, we have the opposite situation – the alleged subcontractor's product (the scrubber) allegedly damaged Gulf Coast's work – there is no allegation that Gulf Coast's "work" damaged anything, and Gulf Coast is the insured at issue here. Thus, the only damage still remains the work of Gulf Coast as compared to the completed work of a subcontractor. For this reason the exception to the "your work" exclusion does not apply to this case and the exclusion precludes coverage of the underlying suit as a matter of law.

Moreover, even if the "subcontractor exception" to the "your work" exclusion applies to the allegations in the underlying suit, this exception applies only to exclusion l – the "your work"

---

[13] This case is included in the appendix at p. 278.

exclusion.  The exception does not apply to any other exclusion in the policy, including the other exclusions asserted as bases for denial of coverage in this Motion.

**E.**    **Exclusion m – impaired property**

The policy also excludes coverage for:

**m.**    **Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

App. at 32.

The term "impaired property" is defined to mean:

8.    "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a.    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b.    You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a.    The repair, replacement, adjustment or removal of "your product" or "your work"; or

b.    Your fulfilling the terms of the contract or agreement.

App. at 39.

The impaired property exclusion operates to exclude the loss of use of property that has not been physically injured.  *See Mt. Hawley Ins. Co. v. Steve Roberts Custom Builders, Inc.*, 215

F.Supp.2d 783, 792 (E.D.Tex. 2002) ("Exclusion (m) applies to 'impaired property' and not to property that has been physically injured."); *McKinney Builders II, Ltd. v. Nationwide Mut. Ins. Co.*, No. CIV. A. 3:97-CV-3053, 1999 WL 608851, *9 (N.D. Tex. 1999).[14] The exclusion applies where an insured has incorporated defective materials in a project that reduce the levels of performance, quality, or durability of the constructed property. *See* Joseph G. Blute, *Analyzing Liability Insurance Coverage for Construction Industry Property Damage Claims*, Coverage (Committee on Insurance Coverage Litigation Report), May/June 1997, at 31.

One insurance treatise has explained this exclusion as follows:

Property is "impaired" when it cannot be used or is less useful because:

(1)     It incorporates the named insured's product or work and the insured's product or work is defective, dangerous, etc.; or

(2)      The named insured has not fulfilled the terms of a contract (e.g., late completion of a job).

(3)     Even when Requirement 1 or 2 listed above has been met, the property in question will be considered "impaired property" – and the exclusion will apply – only if the property can be restored to use through the repair or replacement of the named insured's product or work, or the fulfillment of the named insured's contractual obligation.

COMMERCIAL LIABILITY INSURANCE, International Risk Management Institute, Inc. (4th ed. 2/04), at § V.L.13.

Here, Piramal's factory is the "impaired property." App. at 243-44 ¶¶ 6-19. The factory is tangible property that incorporates Gulf Coast's product or work. *Id.* Piramal alleges that its facility is less useful because of the incorporation of the RTO and/or scrubber that are allegedly defective and/or fail to satisfy the terms of the contract between Gulf Coast and Piramal. *Id.* Piramal alleges that the reason the RTO does not function properly is because it was not designed properly as required by the parties' contract, and that Gulf Coast failed to properly

---

[14] Included in the appendix, at p. 283.

manufacture the scrubber system.  *Id.* at ¶¶ 17-18.  Consequently, the alleged "impaired property" – the Piramal factory – can be restored to full use if Gulf Coast fulfills the terms of the parties' contract.  The claims thus are excluded by the impaired property exclusion in the ASIC policy.

Based on the foregoing, there is no coverage for the claims asserted against Gulf Coast under Coverage A, the CGL Bodily Injury and Property Damage Coverage in the ASIC policy.

## III.  No Duty to Defend under Coverage D – Environmental Consultant's Professional Liability

### A.  Exclusion of Professional Services

This coverage part in the ASIC Policy was added by endorsement ASIC-ENV 01 300 08 07: Coverage D – Environmental Consultant's Professional Liability ("CPL endorsement").  The endorsement first broadly excludes claims arising from professional services from *all* coverage parts in the policy:

A. The following Exclusion is added to and shall apply to *all coverage parts* and sections of the policy:

This insurance does not apply to . . .  "property damage"  . . . arising out of the rendering of or failure to render any "professional services" which are performed directly by you or on your behalf for others.

"Professional Services" means:

a.      The preparing, approving, recommending or failing to prepare, approve or recommend maps, drawings, opinions, reports, surveys, change orders, *designs*, specifications, hazard assessment plans, response actions, *abatement methods or products*, air monitoring plans or insurance requirements;

b.      Supervisory, inspection, architectural, training, or engineering services; or

c.      Commercial or industrial hygiene, air monitoring, testing, laboratory analysis, public health, legal accounting, architectural, medical, nursing, data processing, consulting or investment advisory services.

App. at 11 (emphasis added).  Piramal alleges that the RTO, an air pollution control device,
failed because Gulf Coast failed to properly design the RTO to destruct chloro-fluorocarbons as
required by the contract between the parties.  App. at 242, 244 ¶ 3, 17.  Piramal also alleges that
Gulf Coast failed to render professional services in the scrubber design business.  *Id.* at 251, ¶¶
57-59. This broad exclusion applies to all coverage parts in the policy, including Coverage A
(CGL coverage).  Therefore, even if the claims in the underlying suit are not excluded by another
exclusion in the ASIC policy (which they are), this exclusion precludes coverage for the claims
asserted in the underlying suit.

### B.      Consultant's Professional Liability Coverage

After stating the broad exclusion for liability arising from the rendering of professional
services, the CPL endorsement adds back limited claims-made coverage for certain activities in
the Coverage D insuring agreement.  This insuring agreement is discussed below in two parts.

### 1.      *Part (a) – coverage for "covered damages" arising out of "covered professional activities"*

The first part of the insuring agreement defines the scope of the coverage provided in
Coverage Part D:

> However, it is agreed that the exclusion above shall not apply to the following
> coverage added to SECTION I. – COVERAGES as COVERAGE D. –
> Environmental Consultant's Professional Liability:
>
> **COVERAGE D - Environmental Consultant's Professional Liability**
>
> **1.      Insuring Agreement.**
>
> a.      We will pay on behalf of the insured those sums that the insured becomes
> legally obligated to pay as "covered damages" because of the negligent acts,
> errors or omissions of the insured in the performance of "covered professional
> activities" in the "coverage territory".  We will have the right and duty to defend
> any "claim" or "suit" seeking those "covered damages".  We may at our
> discretion investigate and/or settle any "claim" or "suit" for "covered damages". .
> . .

**American Safety Indemnity Company's Amended Motion for Summary Judgment
and Brief in Support –**                                                                                      **Page 27**
D/857780.2

App. at 11.   Assuming for the sake of argument that the underlying suit alleges "covered professional activities" as that term is defined in the policy,[15] ASIC has an obligation to defend Gulf Coast under the CPL coverage only if the suit seeks "covered damages" that are reported in writing to ASIC during the policy period.  *Id.*

"Covered damages" is defined in the General Amendatory Endorsement Broad Form, ASIC – ENV 01 039 07 07 as follows:

> "Covered damages" means:
>
> a.      monetary awards or settlements of compensatory damages for which the Insured becomes legally obligated to pay, *but does not include*:
>
> 1.      Injunctive or equitable relief;
>
> 2.      the return of fees or other charges for services rendered; and
>
> 3.      any fines, including but not limited to civil, administrative or criminal fines, penalties, assessments, and punitive damages, exemplary damages, multiplied damages, liquidated damages or damages for delay; and
>
> b.      all "claim related costs."

App. at 56.

Here, the underlying plaintiff seeks the return of the fees charged by Gulf Coast for the RTO and recovery of any penalties assessed by PADEP.  App. at 251 ¶ 60.  These damages are excluded under the definition of "covered damages" and thus there is no coverage under the CPL endorsement for the claims asserted in the underlying suit.

### 2.      *Part (b) – Trigger provisions*

Nevertheless, even if the underlying suit alleges "covered professional activities" and seeks "covered damages," the CPL endorsement provides coverage <u>only if</u> the insuring

---

[15] "Covered Professional activities" is defined as, "Those environmental professional services performed for a fee directly by you or on your behalf for others including engineering, consulting, project management, construction management activities, and the professional services set forth in the application."  App. at 15.

agreement in Coverage D is properly triggered. Subpart (b) of the insuring agreement in the

CPL endorsement sets forth the trigger provisions for the CPL coverage:

> b.      This insurance applies to "covered damages" only if:
>
> (1)      The "covered damages" arise out of the performance of "covered professional activities" subsequent to the Retroactive Date as set forth in this endorsement and before the end of the policy period;
>
> (2)      The negligent act, error or omission is committed subsequent to the Retroactive Date as set forth in this endorsement and before the end of the policy period;
>
> (3)      The insured's responsibility to pay "covered damages" is determined in a "suit" on the merits in the "coverage territory" or in a settlement we agree to; and
>
> **(4)      A "claim" for "covered damages" is first made against, and reported to us by, the insured in writing during the policy period.**

App. at 11-12 (emphasis added).

Assuming for the sake of argument that the acts or omissions alleged in the underlying

suit constitute "covered professional activities" and that Piramal seeks "covered damages" (see

discussion above), the CPL endorsement was not triggered because Subpart (b)(4) of the trigger

provisions was not satisfied as the claim was not reported to ASIC during the policy period.

Subpart (b)(4) requires that the "claim" for "covered damages" is "first made against, and

reported to us by, the insured during the policy period." *Id.* Subpart (b)(4) thus has two separate

requirements: The "claim" for "covered damages" must be first made (by the plaintiff) against

the insured during the policy period; and the "claim" for "covered damages" must be reported to

ASIC during the policy period. This type of insuring agreement is known as a "claims made and

reported" type of policy; indeed, the CPL endorsement expressly states this in emphasized print

at the beginning of the endorsement: "***THE COVERAGE AFFORDED UNDER THIS***

***ENDORSEMENT IS WRITTEN ON A CLAIMS-MADE AND REPORTED BASIS***." App. at

11.

In a claims-made and reported policy, the requirement that the claim (by the plaintiff against the insured) be made during the policy period serves to maximize the insurer's opportunity to investigate, set reserves and control or participate in negotiations with the claimant. *Prodigy Comm. Corp. v. Agricultural Excess & Surplus Ins. Co.*, 288 S.W.3d 374, 380 (Tex. 2009). In contrast, the requirement in such a policy that the claim be reported to the insurer during the policy period defines the "temporal boundaries of the policy's basic coverage terms . . ." *Id.* (quoting 13 COUCH ON Insurance 3D § 186:13); see also *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Willis*, 296 F.3d 336, 343 (5th Cir. 2002) (the purpose of claims-made policies is to provide the exact notice periods that limit liability to a fixed period of time). Notice therefore constitutes the event that triggers coverage. *Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*, 174 F.3d 653, 659 (5th Cir. 1999); *see, e.g., FDIC v. Mijalis*, 15 F.3d 1314, 1330 (5th Cir.1994) (noting that "notice provisions are integral parts of claims made policies"); *McCullough v. Fidelity & Deposit Co.,* 2 F.3d 110, 112 (5th Cir.1993) ("Notice, as provided in the policy, is required in a claims made policy to trigger coverage."). Notice is not simply part of the insured's duty to cooperate, but defines the limit of the insurer's obligation, and if there is no timely notice there is no coverage. *Prodigy*, 288 S.W.3d at 380. For this reason notice provisions in claims-made policies are strictly interpreted by courts. *Matador Petroleum*, 174 F.3d at 659.

The term "claim" is defined in the ASIC policy as:

> [A]ny written demand, notice, request for defense, request for indemnity, or other legal or equitable proceeding against the insured by a person, entity or asserted class . . .

App. at 56. According to the summary judgment evidence submitted by co-defendant Endurance in its motion for summary judgment, at a minimum a "claim" was made by Piramal against Gulf Coast (the "claims first-made" component) in the May 5, 2010 email from Piramal to Gulf Coast

that is found on page 563 of Endurance's appendix to its motion for summary judgment.[16]  Gulf Coast thus had ample opportunity to report the claim to ASIC prior to the expiration of the ASIC policy on May 26, 2010, as is required by the "claims-reported" component of subpart (4)(b).

Gulf Coast, however, did not tender the claim to ASIC until June 25, 2010, clearly after the reporting period in the policy (the policy term).  App. at 107.  ASIC had not been notified of any claim related to the allegations in the underlying suit prior to June 25, 2010.  App. at 1-2.  June 25 is exactly 30 days after the expiration of the policy on May 26, 2010.  The CPL endorsement includes an automatic 30-day extended reporting period that applies under certain conditions, but those conditions do not apply here.  This provision provides:

**EXTENDED REPORTING PERIOD OPTION**

**(1.)    Automatic Extended Reporting Period**

Upon termination of this policy for any reason other than non-payment of premium or non-compliance with the terms and conditions of this policy, a "claim" first made against the insured and reported to us, in writing, within 30 days of the end of the policy period will be deemed to have been made on the last day of the policy period, provided that the "claim" is for "covered damages" because of a negligent act, error or omission in the performance of "covered professional activities" in the "coverage territory" provided:

(1)    The negligence act, error or omission is committed subsequent to the Retroactive Date . . . and before the end of the policy period; and

(2)    The "covered damages" arise out of the performance of "covered professional activities" subsequent to the Retroactive Date as set forth in this Endorsement and before the end of the policy period.

All coverage shall be subject to all of the policy terms, conditions and exclusions. The Automatic Extended Reporting Period *shall only apply if no other similar insurance is in force at the time of this Automatic Extended Reporting Period*. . . .

App. at 16 (emphasis added).

---

[16] A copy of this email is included in ASIC's appendix at 293.

The key to the question of whether the extended reporting period applies is whether there was "other similar insurance" "in force" at the time of the extended reporting period. These terms are not defined in the ASIC policy, and thus must be given their plain, ordinary and generally accepted meaning. *Bituminous Cas. Corp. v. Maxey,* 110 S.W.3d 203, 208-09 (Tex. App. – Houston [1st Dist.] 2003, pet. denied.). The word "similar" is defined as "having characteristics in common; very much alike," and "alike in substance or essentials." Webster's Third New International Dictionary (Merriam-Webster, Inc. 1993). "In force" means "valid, operative, binding." *Id.*

The other defendant in this coverage suit, Endurance, insured Gulf Coast for the policy period immediately after ASIC's policy period (the Endurance coverage is effective May 26, 2010, which is the expiration date of the ASIC policy). App. at 108-214. By Gulf Coast's *own admission* the Endurance policy is "valid, operative and binding": Gulf Coast affirmatively contends, "ENDURANCE's primary policy had its inception May 26, 2010 and coverage through ENDURANCE *continues in effect to the present time*." Plaintiff's First Amended Original Complaint for Declaratory Judgment ¶ 9 (emphasis added).

Furthermore, the Endurance policy provides coverage to Gulf Coast that has "characteristics in common" and is "alike in substance or essentials" to the coverage ASIC provides under the ASIC policy. Like the ASIC policy, the Endurance policy includes commercial general liability coverage (App. at 112-136), contractors pollution liability coverage (App. at 137-149), and professional liability coverage (App. at 150-161). By definition "similar" coverage does not have to be exact in every term – it just has to be alike in the "substance or essentials." Webster's Third New International Dictionary (Merriam-Webster, Inc. 1993).

Gulf Coast grasps at straws to find differences between the ASIC and Endurance policies. It first points out (in the original summary judgment briefing) that the two policies have different coverage dates. *Of course* the policies have different coverage dates – that is the point of the extended coverage period, which looks to the *subsequent* coverage in determining whether the extended reporting period applies. Any subsequent policy will have a different coverage term, but that certainly is not a difference in "substance or essentials." Gulf Coast also argues that the time of the reporting period for the Endurance policy is different than the ASIC policy, but this likewise is not a difference in the "substance or essentials" of the two policies. The Endurance coverage and ASIC coverage have the same essential substantive coverage parts and are thus "similar" as a matter of law. Because the automatic extended reporting period does not apply if other similar insurance is in force at the time of the extended reporting period, and because other similar insurance was in force at the time of the ASIC automatic extended reporting period, the ASIC extended reporting period does not apply and the CPL coverage was never triggered.

The fact that Gulf Coast waited too long to report the Piramal claim to ASIC and thus, <u>by its own inaction</u>, failed to trigger either the CPL coverage in the ASIC policy or the similar professional liability coverage in the Endurance policy does not mean that ASIC is obligated to cover the claim.[17] Coverage under the ASIC policy is determined by the terms and conditions of the ASIC policy. Whether or not the claim is covered by Endurance is irrelevant to the question of whether the extended reporting period in the ASIC policy applies because the application of the extended reporting period does not hinge on whether a subsequent policy denies coverage – it hinges on whether "other similar insurance" is "in force." As discussed, "other similar

---

[17] A "claim" was made by Piramal against Gulf Coast during the ASIC policy period. App. at 293. Gulf Coast could have immediately reported the claim to ASIC but chose not to do so at its own peril.

insurance" was "in force" during the extended reporting period time and the extending reporting period therefore does not apply.

Notice of a claim is the event that triggers coverage, and if there is no timely notice there is no coverage as a matter of law. *Prodigy*, 288 S.W.3d at 380; *see also Matador Petroleum*, 174 F.3d at 659 (notice provisions in claims-made policies are strictly interpreted by courts).[18] Consequently, the CPL coverage in Coverage D of the ASIC policy was never triggered because the claim was not reported to ASIC during the policy period as required by Section (b)(4) of the insuring agreement of Coverage D. App. at 11-12.

C.    **CPL Endorsement Exclusions**

Even if the extended reporting period in the ASIC policy applies in this case (which it does not) and Gulf Coast's claim was timely reported to ASIC (which it was not), the CPL endorsement provides several exclusions that exclude the claims pled in the underlying suit:

**Exclusions.**

This policy does not apply to any claim, suit, loss, expenses, liability, injury or damage "arising from" or resulting from:

*        *        *

---

[18] In its prior summary judgment briefing Gulf Coast completely misses the mark on the Court's holding in *Prodigy* as applied to the facts here. *Prodigy* involved a claims-made policy, Coverage D of the ASIC policy. The notice provision required notice to be given "as soon as practicable" but in no event later than 90 days after the expiration of the policy period or discovery period. *Prodigy*, 288 S.W.3d at 376. The insured was served with the underlying complaint in June 2002 but did not notify the insurer of the suit until June 2003. The notice was provided within 90 days of the expiration of the discovery period as required by the specific notice period in the policy, but notwithstanding this the insurer denied the claim asserting that it did not receive notice "as soon as practicable." *Id.* The Supreme Court held that an insurer is not required to prove it was prejudiced under a claims-made policy if a claim is not reported to the insurer within the *specific notice period* stated in the policy but must prove prejudice in order to deny a claim on the basis that the claim was not made "as soon as practicable." *Prodigy*, 288 S.W.3d at 381-82. Indeed, the *East Texas Medical Center* case cited by Gulf Coast and attached to its response to ASIC's motion for summary judgment states this plainly: "If the insured does not comply with the cut-off in a claims-made and reported policy, then prejudice is not required to avoid payment." *East Tex. Medical Center Regional Healthcare System v. Lexington Ins. Co.*, 2011 U.S. Dist. LEXIS 18918 *8 n.5 (E.D. Tex. Feb. 25, 2011). In other words, the policy in *Prodigy* required a second layer of notice that is not included in the ASIC policy – a requirement that in addition to reporting the claim to the insurer within a specified period of time, the insured was obligated to report the claim "as soon as practicable." The part of the court's holding related to that second layer is thus inapplicable to this case. *Prodigy*, 288 S.W.3d at 376.

**American Safety Indemnity Company's Amended Motion for Summary Judgment
and Brief in Support –**                                                                 **Page 34**
D/857780.2

c.       **Contractual Liability.**

Breach of contract or failure to perform any contract or agreement or the assumption of liability by any insured in a written or oral contract or agreement. This exclusion does not apply to liability for "covered damages" that you would have in the absence of the contract or agreement.

*       *       *

f.       **Property Damage.**

"Property damage" to: . . . (2) "Your product"; . . .

g.       **Goods and Products.**

Or as a consequence of a deficiency or malfunction of any product or piece of equipment manufactured, sold, or distributed by you, your subsidiaries, any entity which wholly or partly owns, operates or manages you or any subsidiary of such entity, others under license by you, your vendors or subcontractors or any other person or organization working directly or indirectly on your behalf.

*       *       *

i.       **Guaranties and Warranties.**

Any implied, express, oral or written guarantee or warranty.

*       *       *

y.       **Faulty Workmanship.**

Any cost to repair or replace faulty workmanship in any construction, erection, fabrication, installation, assembly or manufacturing process performed or provided by any insured, including materials, parts or equipment furnished in connection therewith.

App. at 12-14.

These exclusions mirror and expand upon the business risk exclusions in the CGL coverage of the policy (discussed above in Section II), indicating the overall intent that this policy does not cover the insured's liability for its own negligent or faulty work that does not cause damage or injury to other property or persons. Based on the discussion and authority cited in connection with the contractual liability exclusion and other business risk exclusions discussed

above in connection with the CGL coverage, ASIC has no duty to defend Gulf Coast against the claims asserted in the underlying suit as a matter of law, even if the CPL coverage was properly triggered, which it was not.

In particular, ASIC calls the Court's attention to Exclusion g. "Good and Products." This exclusion is unambiguous and excludes the underlying claims as a matter of law. Piramal alleges that Gulf Coast manufactured and sold the RTO (including the scrubber that was a part of the RTO) to Piramal and that it was deficient in its operation and performance. App. at 242 ¶¶ 3, 5, 16, 18, 22, 58. This exclusion also unambiguously includes deficient products manufactured by a subcontractor of the insured, like the allegedly defective scrubber manufactured by Gulf Coast's subcontractor. Thus, even if the CPL coverage was triggered, which it was not, the business risk exclusions cited in ASIC's briefing, including this exclusion, preclude coverage as a matter of law.[19]

Consequently, even if the suit against Gulf Coast was timely reported to ASIC, the business risk exclusions in the CPL coverage still exclude coverage for Piramal's claims. Because the claims are for breach and arise from the faulty product of the named insured, there is no coverage under the ASIC policy.

## IV.   Effect of Claims in First Amended Complaint

The claims asserted in the underlying suit that are the basis of Gulf Coast's assertion that ASIC has a duty to defend it against the underlying claims were only recently added to the underlying suit on February 16, 2012, in Piramal's First Amended Complaint. App. at 242.[20] As discussed, in the First Amended Complaint, for the first time, Piramal asserted that Gulf Coast's

---

[19] Contrary to Gulf Coast's claim, this exclusion does not nullify the CPL coverage. The CPL coverage is intended to apply to professional services, like engineering or design services, without covering the manufacture, sale or distribution of products. If Gulf Coast had simply designed the RTO, this exclusion might not apply, but here Gulf Coast allegedly manufactured and sold the RTO. *Id.*

[20] A copy of the Original Complaint in the underlying suit is attached to Gulf Coast's Complaint in this lawsuit.

**American Safety Indemnity Company's Amended Motion for Summary Judgment**
**and Brief in Support –**                                                                 **Page 36**
D/857780.2

subcontractor, Delta, provided a scrubber that was defective.  App. at 251 ¶ 58.  Piramal asserted

for the first time that this defective scrubber flooded and damaged other parts of the RTO.  *Id.*

These are the allegations Gulf Coast points to that allegedly trigger ASIC's duty to defend Gulf

Coast in the underlying suit.  While ASIC contends (as discussed in detail above) the new

allegations still do not allege covered damages, if the Court disagrees then a duty to defend

would only be owed from the date the recent amendment was tendered to ASIC.  *Lafarge Corp.*

*v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 400 (5th Cir. 1995).

## DUTY TO INDEMNIFY

Generally, under Texas law, the duty to indemnify is separate and distinct from the duty

to defend.  *D.R. Horton – Texas, Ltd. v. Markel Int'l Ins. Co.,* 300 S.W.3d 740, 743-44 (Tex.

2009); *Farmers Tex. County Mut. Ins. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997).  While the duty

to defend is determined by the application of the eight-corners rule, the duty to indemnify is

determined by the actual facts that establish liability.  *D.R. Horton,* 300 S.W.3d at 744.

However, the duty to indemnify is justiciable *before* the insured's liability is determined when

the court determines that there is no duty to defend, "and the same reasons that negate the duty to

defend likewise negate any possibility the insurer will ever have a duty to indemnify."  *Griffin*,

955 S.W.2d at 84.

We have the situation covered by *Griffin* here.  First, because the CPL coverage

(Coverage D) was never triggered as a matter of law, as is discussed in Section III(B)(2) above,

there is no coverage obligation under the CPL endorsement's insuring agreement, period – this

includes both the duty to defend and the duty to indemnify.  Second, Piramal's suit is for a

defective RTO and/or scrubber, and nothing more.  For all of the same reasons discussed in this

motion in connection with the duty to defend under both Coverage A and Coverage D of the

ASIC policy, there are no facts that Piramal can introduce at trial under its pleading that will give

**American Safety Indemnity Company's Amended Motion for Summary Judgment**
**and Brief in Support –**                                                                                          **Page 37**
D/857780.2

rise to a duty to indemnify Gulf Coast for any liability it may have under its contract with Piramal. The fact is that a liability insurance policy, like the ASIC policy, does not provide coverage for an insured's own defective work or product where the only damage is the defective product itself. For all of the reasons and under all of the authority cited in this motion in connection with the duty to defend, ASIC is entitled to judgment as a matter of law dismissing the claims asserted by Gulf Coast against ASIC on both the duty to defend and indemnify Gulf Coast for the claims in the underlying suit.

## ASIC EXCESS POLICY

Because ASIC does not owe a duty to defend or indemnify Gulf Coast under its primary policy, for all of the reasons discussed above, ASIC does not owe any defense or indemnity obligation to Gulf Coast under the ASIC excess policy. Pursuant to the insuring agreement in the excess policy, sections a. and c., the ASIC excess policy only applies to damages to which the "underlying insurance applies." App. at 85. It also contains the business risk exclusions noted above. App. at 86-89. The ASIC excess policy provides no coverage at all until the primary insurance policy limits are exhausted. App. at 85. Here, the primary insurance policy does not apply to the damages and is not exhausted. ASIC is thus entitled to summary judgment dismissing the claims asserted by Gulf Coast against ASIC on its excess policy.

## CONCLUSION

Based on the summary judgment evidence and authority submitted by ASIC in this Amended Motion for Summary Judgment and Brief in Support, the claims asserted by Piramal against Gulf Coast in the underlying suit are not covered by the ASIC policies as a matter of law. ASIC accordingly respectfully requests that the Court GRANT its Amended Motion for Summary Judgment, deny Gulf Coast's motions for summary judgment, dismiss all of Gulf Coast's claims against ASIC with prejudice, and for all other relief to which it is entitled.

Respectfully submitted,

**COOPER & SCULLY, P.C.**

/ Lauren N. Pierce /

By:_____

    **LAUREN N. PIERCE**
    Attorney in Charge
    State Bar No. 00784675
    Southern District Bar No. 18307
    Lauren.pierce@cooperscully.com

    900 Jackson, Suite 100
    Dallas, Texas 75202
    Telephone:  214.712.9500
    Facsimile:  214.712.9540

    **ATTORNEYS FOR DEFENDANT
    AMERICAN SAFETY INDEMNITY
    INSURANCE COMPANY**


**<u>CERTIFICATE OF SERVICE</u>**

    I hereby certify that on May 8, 2012, I served the following counsel of record via the electronic filing system:

Charles S. Fuquay
Jones, Allen & Fuquay, LLP
8828 Greenville Avenue

Steven B. Harris
Squire Sanders & Dempsey (US) LLP
6200 Chase Tower
600 Travis Street
Houston, TX  77002

/ Lauren N. Pierce /

_____

**LAUREN N. PIERCE**

**American Safety Indemnity Company's Amended Motion for Summary Judgment
and Brief in Support –**                                     **Page 39**
D/857780.2