UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GULF COAST ENVIRONMENTAL SYSTEMS, LLC, | § § § § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 4:13-CV-539 |
| | § § | |
| AMERICAN SAFETY INDEMNITY COMPANY, | § § § | |
| Defendant. | | |

## MEMORANDUM AND ORDER

Pending before the Court are Plaintiff Gulf Coast Environmental Systems, LLC's ("Gulf Coast") Amended Motion for Partial Summary Judgment and Defendant American Safety Indemnity Company's ("ASI") Amended Motion for Summary Judgment. (Doc. Nos. 42, 44.)[1] These motions were referred to Magistrate Judge George C. Hanks, Jr. for a Report and Recommendation ("R&R").[2] Judge Hanks filed the R&R on April 21, 2015, and ASI filed timely objections thereto. For the reasons that follow, the Court finds that ASI's objections are without merit.

### I.     BACKGROUND

Gulf Coast is an environmental services company that purchased insurance policies from ASI. Piramal Critical Care, Inc. ("Piramal") hired Gulf Coast to manufacture, deliver, and install a regenerative thermal oxidizer system ("RTO") at Piramal's facility in Pennsylvania. Piramal's contract with Gulf Coast contained detailed specifications for the RTO and required the RTO to

---

[1] All docket references are to Civil Action Number 4:13-CV-539.
[2] Soon after issuing his R&R in this case, Judge Hanks was confirmed as a United States District Court Judge. This Order will refer to him as a Magistrate Judge because that was his role in this case.

run continuously for 30 days after installation to ensure that the released emissions satisfied the contract's parameters and state regulations. If the RTO failed to perform properly, the parties' contract gave Gulf Coast three months to repair the system. After contracting with Gulf Coast, Piramal entered into a consent order and decree with a state regulatory agency, stating that it would bring its factory into compliance with emission standards by May 10, 2010.

The RTO "went on-line" on February 26, 2010, but Piramal alleges that it never functioned properly. Piramal contends that one of the problems with the RTO was a "scrubber" manufactured by Gulf Coast's subcontractor, Delta Cooling Towers ("Delta"). According to Piramal, this scrubber system flooded and damaged other parts of the RTO. Piramal sued Gulf Coast in Pennsylvania state court, alleging breach of contract and warranty claims. Piramal later amended its claims to include two counts of professional negligence, as well as allegations that the scrubber system was defectively designed and manufactured.

Gulf Coast requested a defense and indemnification from ASI, but was denied. Gulf Coast then filed this suit, seeking a declaratory judgment that it is entitled to a defense and indemnification in the underlying suit under the terms of the insurance policy issued by ASI.

## II.     ASI'S OBJECTIONS

ASI objects to the R&R's conclusion that it has a duty to defend Gulf Coast in the underlying suit. It contends that it has no duty to defend because one or more of exclusions in its policy apply. ASI further argues that it has no duty to defend Gulf Coast under Coverage D of its policy because Gulf Coast failed to give timely notice of the claims and covered damages are not alleged in the underlying suit. ASI also objects to the R&R's finding that its duty to defend was triggered by Piramal's Original Complaint. Finally, ASI argues that it has no duty to indemnify

Gulf Coast under either the primary policy or its excess policy. The Court will address each of these objections in turn.

### A. Applicability of the Professional Services Exclusion

ASI's policy includes two types of coverage at issue in this suit: (1) commercial general liability coverage (Coverage A) and (2) environmental professional liability coverage (Coverage D). The endorsement that added Coverage D to the policy includes a professional services exclusion that applies to all parts of the Policy, except Coverage D. The professional services exclusion states, in relevant part,

> This insurance does not apply to "bodily injury," "property damage," "personal injury," or "advertising injury" arising out of the rendering of or failure to render any "professional services" which are performed directly by you or on your behalf for others.

The exclusion defines professional services as

> a. The preparing, approving, recommending or failing to prepare, approve or recommend maps, drawings, opinions, reports, surveys, change orders, designs, specifications, hazard assessment plans, response actions, abatement methods or products, air monitoring plans or insurance requirements;
> b. Supervisory, inspection, architectural, training, or engineering services; or
> c. Commercial or industrial hygiene, air monitoring, testing, laboratory analysis, public health, legal, accounting, architectural, medical, nursing, data processing, consulting or investment advisory services,

Under this exclusion, if the claims in the underlying suit arise from the rendering of or failure to render professional services, only Coverage D applies. ASI contends that the professional services exclusion applies to all of Piramal's claims against Gulf Coast, thereby limiting any coverage under the policy to Coverage D.

ASI first argues that only Coverage D applies because Piramal's claims arise from Gulf Coast's alleged failure to properly design the RTO. Because Piramal's claims are based on a design failure, they are subsumed by the professional services exclusion. Gulf Coast disputes this characterization, arguing that some of Piramal's claims should be classified as ordinary negligence.

In interpreting the professional services exclusion, courts have drawn a distinction between services that are inherent to the provision of professional services and those that are

3

incidental to such services. *See e.g., Allstate Ins. Co. v. Disability Servs. of the Southwest Inc.*, 400 F.3d 260, 264 (5th Cir. 2005) ("In determining what falls under the rubric of 'professional services', we are to consider the inherent skills typified by that profession."). For example, courts have noted the difference between "services pertaining to some profession rendered by one in the pursuit of such profession" and "menial services, or the services of a common laborer." *Hartford Cas. Ins. Co. v. DP Engineering, LLC*, No 4:14-CV-452-A, 2015 WL 1927462, *4 (citing *Maryland Cas. Co. v. Crazy Water Co.*, 160 S.W.2d 102, 104 (Tex.Civ.App.-Eastland 1942)). In the context of a medical lawsuit, the Texas Supreme Court has held that a professional services exclusion does not preclude a duty to defend where the underlying suit alleges both negligent professional services and negligent services of some other nature. *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 372 (5th Cir. 2008) (citing *Utica Nat'l Ins. Co. v. Am. Indem. Co.*, 141 S.W.3d 198 (Tex. 2004)).

Piramal alleges that Gulf Coast failed to exercise reasonable care in the "engineering, design, manufacturing, delivery, installation and commissioning for the RTO." (Doc. No. 24-1 at 6; Doc. No. 24-2 at 6.) These allegations include both professional negligence (e.g., engineering, design) and ordinary negligence (e.g., delivery, installation). *Cf. Gore Design*, 538 F.3d at 372 ("Here, under the Statement of Claim, the design of the project – professional services – may have been negligent, resulting in the damage to the Aircraft. Alternatively, a worker may simply have made a mistake in the implementation of the design, which could be ordinary negligence."). Accordingly, the professional services exclusion does not apply to exclude all of Piramal's claims.

ASI also argues that the professional services exclusion bars coverage for property damage arising from abatement methods or products and commercial or industrial hygiene.

Because the RTO is an abatement method or product and a product for commercial or industrial hygiene, ASI believes that all of Piramal's claims in connection with the RTO are excluded by the professional services clause. Gulf Coast responds that ASI did not present this argument to the Magistrate Judge, and therefore it should be considered waived. ASI contends that the argument is not novel and was raised in Section III(A) of its Amended Motion for Summary Judgment.

A review of Section III(A) of ASI's Amended Motion for Summary Judgment reveals that Gulf Coast is correct; ASI did not argue that the professional services exclusion applied because the RTO is an abatement method or product and a product for commercial or industrial hygiene. ASI merely described the RTO as an "air pollution control device" before arguing that Piramal's claims were premised on Gulf Coast's failure to "properly design the RTO" and "render professional services in the scrubber design business." (Doc. No. 44 at 34.) A party who objects to the magistrate judge's report waives legal arguments not made in the first instance before the magistrate judge. *Freeman v. Cnty. of Bexar*, 142 F.3d 848, 851 (5th Cir. 1998). Since ASI did not raise this argument before the Magistrate Judge, it must be deemed waived.

### B. Applicability of Exclusion j(6)

ASI also argues that the R&R erroneously concluded that the products-completion operations exception to exclusion j(6) applies to Piramal's claims. The products-completion operations hazard exception states,

> 16. "Products-completed operations hazard":
>    a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
>       (1) Products that are still in your physical possession; or
>       (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
>          (a) When all of the work called for in your contract has been completed.
>          (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
>          (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

> Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The products-completion operations hazard provides coverage for *completed* operations, but ongoing operations remain excluded from coverage. ASI contends that the underlying suit alleges that the work required of Gulf Coast under its contract with Piramal was not completed, and therefore ASI has no duty to defend. Gulf Coast argues that the products-complete operations hazard exception applies because Gulf Coast's product is finished and because the RTO was put to use.

Gulf Coast's latter argument is more persuasive. Piramal's allegations unambiguously state that the RTO went on-line on February 26, 2010. After Piramal began using the RTO, it realized that the RTO failed to properly destruct chloro-fluoro carbons, as required by the contract between Piramal and Gulf Coast. Because the RTO was put to its intended use by Piramal – albeit unsuccessfully – Piramal's claim falls within the scope of the products-completion operations hazard exception.[3] Thus, exclusion j(6) does not apply.[4]

---

[3] Like all words in an insurance policy, the phrase "put to its intended use" is given its plain meaning. *Nat. Union Fire Ins. Co. of Pittsburgh, PA v. Crocker*, 246 S.W.3d 603, 606 (Tex. 2008); *see also Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 881 (5th Cir. 2009) ("Applying the common meaning, then, the Wellons unit was put to use as soon as Martco began employing it as part of its factory. Wellons was putatively done with its responsibilities, and Martco had begun trying to make use of its new furnace.").

[4] ASI takes issue with the Magistrate Judge's reliance on *Vogelbusch USA, Inc. v. State Farm Lloyds,* No. 14-03-00600-CV, 2004 WL 1554995 (Tex.App.-Houston [14th Dist.] July 13, 2004). In *Vogelbusch*, the court determined that the damage alleged in the relevant claim occurred *after* the insured had completed its work by putting its product to its intended use. *Id.* at *6. Because the insurance policy in that case excluded from coverage work that had been put to its intended use, the *Vogelbusch* court held that there was no duty to defend. Because the policy in *Vogelbusch* is the opposite of the policy at issue here, ASI argues that the Magistrate Judge's use of that case was erroneous. This Court disagrees; although the policies at issue are different, *Vogelbusch* offers a helpful example of work that has been put to its intended use.

### C. Applicability of Exclusion 2(b)

In its objections, ASI reiterates its argument that exclusion 2(b), the Contractual Liability Exclusion, precludes its duty to defend. As the Magistrate Judge ably discussed in his R&R, the Fifth Circuit has made clear that the contractual liability exclusion applies only to obligations that reflect an expansion of liability. *See e.g., Crownover v. Mid-Continent Cas. Co.*, 772 F.3d 197, 210 (5th Cir. 2014) ("[F]or a contractual-liability exclusion to apply, the insurer must prove that a contractually-assumed duty effected an expansion of liability beyond that supplied by general law."). When an insured party contractually increases its liability beyond its common law duties, the contractual liability exclusion operates to exclude from coverage claims based on this increased liability. When the requirements of a contract do not exceed an insured party's common law duties, however, the contractual liability exclusion does not apply.

The R&R identifies a number of Piramal's claims – that Gulf Coast breached the Agreement by failing to perform its services in a professional manner, failing to exercise reasonable care in the engineering, design, manufacturing, delivery, installation, and commissioning of the RTO and scrubber, and failing to satisfy its express warranty to deliver goods of merchantable quality – that are *not* excluded by the contractual liability exclusion. ASI's objections fail to address these claims, instead arguing that Gulf Coast's contractual obligation to dismantle the RTO and return the site to its prior condition goes beyond a common law duty to repair defective work. Although ASI may be right that this particular obligation goes beyond Gulf Coast's common law duties, not all of Piramal's claims are based on this obligation. Gulf Coast must only show that one covered claim is alleged, *City of College Station, Tex. v. Star Ins. Co.*, 735 F.3d 332, 337 (5th Cir. 2013), and it has clearly met this burden. Accordingly, exclusion 2(b) does not preclude ASI's duty to defend.

### D. Applicability of Exclusions 2(k) and 2(l)

Exclusions 2(k) and 2(l) preclude coverage for damages to the insured's product or work, but do not preclude coverage for work to other property resulting from the insured's work or product. Exclusion 2(l) also does not apply "if the damaged work or the work out of which the damage arises was performed on [the insured's] behalf by a subcontractor."

ASI argues that the Magistrate Judge erred by finding that Piramal's allegations "at least potentially allege property damage (including loss of use) to something other than Gulf Coast's products and work" and "property damage that was caused by the scrubber manufactured by Delta, Gulf Coast's subcontractor." (Doc. No. 98 at 29.) ASI contends that Piramal's allegations do not allege damage to non-Gulf Coast property so the Magistrate Judge impermissibly read facts into the pleadings or imagined factual scenarios which triggered coverage.

The R&R found that Piramal's claim for "consequential damages as a result of Gulf Coast's failed performance" could potentially include a claim for property damage to non-Gulf Coast property and work. In reaching this conclusion, the R&R drew upon *Lexington Insurance Company v. National Oilwell NOV, Inc.*, 355 S.W.3d 205, 213 (Tex.App.-Houston [1st Dist.] 2011). In *Lexington*, the pleadings alleged that the plaintiff's injection wells were forced to stop operation "while being repaired" and included a claim for "other incidental and consequential damages due to the defective condition of the DHT." *Id.* at 211. The *Lexington* court determined it was reasonable to read these allegations to mean that "the failure of the DHT caused damage to the wells themselves, as they suffered and were out of commission 'while being repaired.'" *Id.* at 212. Because this interpretation suggested damage to other property, including loss of use, it triggered the duty to defend. The R&R found that the phrase "consequential damages as a result

8

of Gulf Coast's failed performance" similarly could encompass damage to other property, thereby avoiding exclusion 2(b).

Although the Court agrees with the Magistrate Judge that the underlying pleadings are far from clear, it also agrees that the pleadings raise the potential of damage to non-Gulf Coast property, including the resulting loss of use. Piramal's pleadings indicate that it signed a consent order with the state regulatory agency that required it to operate a fully functional RTO and meet certain efficiency standards by May 10, 2010. Piramal alleges that, on April 25, 2010, Gulf Coast refused to take responsibility for the failed design and stated that it would remedy the situation only if it was additionally compensated for any remedial work. Piramal further alleges that its agreement with Gulf Coast required Gulf Coast to make necessary arrangements to dismantle the malfunctioning RTO, remove it from the site, and return the site to its original condition. Taken together, these allegations support the Magistrate Judge's conclusion that "consequential damages as a result of Gulf Coast's failed performance" could include loss of use damages from Gulf Coast's failure to provide a functional RTO within the time frame set forth by the consent order. Moreover, Gulf Coast's failure to act upon its alleged obligation to dismantle the RTO and return the site to its original condition could have further hampered Piramal's ability to use its property. Adhering to the well-established rule that an insurer has a duty to defend if there is *potentially* a claim within the coverage of the policy, the Court agrees that exclusions 2(k) and 2(l) do not apply.

ASI further contends that Gulf Coast never advanced this interpretation of consequential damages as grounds for summary judgment, and therefore the Magistrate Judge erred by *sua sponte* granting summary judgment on this basis. In response, Gulf Coast points to paragraph 15 of its Amended Motion for Partial Summary Judgment, which it believes raises this argument.

The Court agrees with ASI that the paragraph Gulf Coast identifies is insufficient to put ASI on notice that failure to present evidence on the argument in question could be a basis for summary judgment. *See John Deere Co. v. American Nat. Bank, Stafford*, 809 F.2d 1190, 1191 (5th Cir. 1987). The identified paragraph argues only that Piramal's suit alleges business interest damages as a result of the allegedly defective RTO. Gulf Coast defines business interests as "the claims of liability by having to pay penalties under the consent decree." (Doc. No. 42 at 12.) This has little, if anything, to do with Gulf Coast's argument that the phrase "consequential damages" includes potential damage to non-Gulf Coast property.

Nevertheless, ASI's argument is unavailing because ASI itself acknowledges in its Amended Motion for Summary Judgment that "Piramal alleges that its facility is less useful because of the incorporation of the RTO and/or scrubber that are allegedly defective and/or fail to satisfy the terms of the contract between Gulf Coast and Piramal." (Doc. No. 44 at 32.) Gulf Coast highlights this statement in its summary judgment briefing to support its contention that the exclusion 2(k) is inapplicable. (Doc. No. 50 at 11.) Because the issue of damage (including loss of use) to non-Gulf Coast property is raised in both parties' briefing, it cannot be said that ASI was caught unawares. *See Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442, 445 (5th Cir. 1991) (acknowledging that, under *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), district courts may enter summary judgment *sua sponte*, so long as the losing party was on notice that it had to come forward with all of its evidence).

Finally, this Court notes that there is a second, alternate reason why exclusion 2(l) does not apply. Piramal's allegations clearly state that the scrubber system manufactured by Gulf Coast's subcontractor, Delta, flooded and damaged other parts of the RTO. This allegation implicates the subcontractor exception to exclusion 2(l). *Cf. Lamar Homes, Inc. v. Mid-Continent*

*Cas. Co.*, 242 S.W.3d 1, 11 (Tex. 2007) ("[W]hen a general contractor becomes liable for damage to work performed by a subcontractor—*or for damage to the general contractor's own work arising out of a subcontractor's work*—the subcontractor exception preserves coverage that the 'your-work' exclusion would otherwise negate.") (emphasis added). Thus, exclusion 2(l) is inapplicable.

### E.  Applicability of Exclusion 2(m)

ASI's policy states that exclusion 2(m) is inapplicable "to the loss of use of other property arising out of sudden and accidental physical injury" to the insured's product or work, after it has been put to its intended use. The Magistrate Judge determined that this exception applies here because Piramal alleges that the scrubber "flooded and damaged the RTO." ASI contends that the term "sudden" has a temporal element, and Gulf Coast has failed to demonstrate that the alleged flooding was "temporally sudden." (Doc. No. 101 at 24.)

ASI correctly notes that the term "sudden" has a temporal component, and "an ongoing condition of sufficient duration cannot constitute a sudden event." *See Saint Paul Surplus Lines Ins. Co. v. Geo Pipe Co.*, 25 S.W.3d 900, 906 (Tex.App.-Houston [1st Dist.] 2000); *see also Mustang Tractor & Equipment Co. v. Liberty Mut. Ins. Co.*, 76 F.3d 89, 92 (5th Cir. 1996) ("Under Texas rules of construction, therefore, "sudden" must be read to include a temporal element."). Courts have also construed the term as referring to an event that is abrupt, quick or brief. *See e.g., Mesa Operating Co. v. California Union Ins. Co.*, 986 S.W.2d 749, 755-6 (Tex.App.-Dallas 1999); *Mustang Tractor*, 76 F.3d at 93. But the Magistrate Judge rightly noted that Piramal's allegation of flooding could potentially satisfy this temporal requirement. Although flooding may occur over the course of hours or days, it can also occur rapidly and

without warning. Since ASI's duty to defend is triggered if the facts alleged potentially support claims for which there is coverage, ASI cannot exclude coverage under exclusion 2(m).

### F. Timing of Duty to Defend

Because this Court agrees with the R&R's conclusion that ASI has a duty to defend, it must take up ASI's objection to the Magistrate Judge's determination that the duty to defend arose at the time of Piramal's Original Complaint. ASI contends that the claims that are the basis for its duty to defend were only added to the suit in Piramal's Amended Complaint. Accordingly, its duty to defend is owed from the date the Amended Complaint was tendered to ASI. Gulf Coast responds that Piramal's Amended Complaint "merely fleshes out the claims from the Original Complaint, and never abandons any claims." (Doc. No. 103 at 12.) Thus, ASI's duty to defend was prompted by the Original Complaint.

Piramal's Amended Complaint adds claims for professional negligence, and newly asserts that Delta provided the defective scrubber that flooded and damaged the RTO. ASI believes these claims are the only ones that trigger its duty to defend Gulf Coast, but its reading of Piramal's Original and Amended Complaints is too narrow. Piramal's Original Complaint alleges a failure to exercise reasonable care in the engineering, design, manufacturing, delivery, installation, and commissioning of the RTO. Piramal's Original Complaint also outlines its obligations under its consent order with the state regulatory agency, the deadline for fulfilling that obligation, and alleges that Gulf Coast's failure to deliver a properly functioning RTO "will cause Piramal to incur monetary penalties from the [state agency], as well as other consequential damages." (Doc. No. 24-1 at 4.) For the reasons outlined above, these allegations "potentially state a cause of action within the terms of the policy." *Gehan Homes, Ltd. v. Employers Mut.*

12

*Cas. Co.*, 146 S.W.3d 833, 838 (Tex.App.-Dallas 2004). Accordingly, they trigger ASI's duty to defend.

### G.  Duty to Indemnify and Excess Policy

Finally, ASI argues that it is entitled to summary judgment on its duty to indemnify and the coverage of the excess policy. As stated in the R&R, both parties have stipulated that ASI's duty to indemnify Gulf Coast is not yet ripe for disposition. Thus, the Court will not reach this issue. Furthermore, ASI acknowledges that its excess policy applies only when the primary insurance policy limits are exhausted. Because the amount of covered damages has yet to be determined, this Court cannot determine whether the excess policy has been triggered.

### III.  CONCLUSION

Having reviewed the pending Motions, the parties' filings, and the relevant case law, and finding no error, the Court accepts the Report and Recommendation.  Accordingly, Plaintiff's Amended Motion for Partial Summary Judgment is **GRANTED**, with respect to ASI's duty to defend, and **DENIED**, with respect to ASI's duty to indemnify, and Defendant's Amended Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 11th day of June, 2015.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE